676 So.2d 1196 (1996)
Teresa SCOTT, Plaintiff-Appellee,
v.
TOWN OF JONESVILLE, Defendant-Appellant.
No. 96-41.
Court of Appeal of Louisiana, Third Circuit.
July 3, 1996.
*1197 Curtis Daniel Street, Monroe, for Teresa Scott.
Christopher R. Philipp, Lafayette, for Town of Jonesville.
Before SAUNDERS, SULLIVAN and GREMILLION, JJ.
SAUNDERS, Judge.
This is an appeal from a judgment of the Office of Workers' Compensation awarding claimant, Teresa Scott, temporary total disability benefits in the amount of $243.85 per week, penalties in the amount of $2,000.00 and attorney's fees in the amount of $4,000.00 in accordance with La.R.S. 23:1201(E). We affirm.

FACTS
On November 15, 1993, plaintiff, Teresa Scott, was working for the defendant, Town of Jonesville, as an assistant city clerk. As Scott stepped out of the Town Hall door, the rug in front of the door went out from under her and she fell sustaining injuries.
This claim was handled on behalf of the employer by Risk Management, Inc., through its adjuster, Keith A. Smith. During the course of her treatment, Mrs. Scott was sent to numerous doctors, all of whom were chosen by Mr. Smith.
Mrs. Scott experienced pain in her neck, arms, lower back and legs and also complained of headaches. Three weeks after the accident, she began to have numbness in her hands. This eventually led to numbness on the right side of her face, and her speech became slurred. Also, one side of her mouth became drawn.
Dr. Haj Murad, who was treating plaintiff when she had the problems with her face, prescribed a series of blood test and an MRI of the brain to investigate the causes of those problems. Dr. Carl Goodman, an orthopedist engaged by defendant, recommended an MRI of the brain to check out the hyperflexia of plaintiff's four extremities. Dr. Richard Gold, a neurosurgeon hired by defendant, diagnosed carpal tunnel syndrome in appellee's wrist.
After Mrs. Scott was allowed to seek treatment from an orthopedist of her choice, she saw Dr. John Fritchie, who recommended surgery for carpal tunnel syndrome. The defendant refused to provide the surgery. However, at trial, the defendant stipulated that it would provide the surgery. Even though the defendant stipulated to the surgery, the hearing officer reviewed the evidence and found that the employer's action in denying the surgery was arbitrary and capricious and imposed a penalty of $2,000.00 and attorney's fees of $4,000.00 to be paid by the defendant. The hearing officer further ordered defendant to pay the disputed medical expenses and to pay temporary total disability benefits, rather than supplemental earnings benefits, because Mrs. Scott had not reached maximum medical improvement.

DISCUSSION
The defendant asks that this court reverse the hearing officer's decision by finding that the hearing officer committed manifest error in awarding penalties and attorney's fees to the claimant for the defendant's refusal to provide the carpal tunnel syndrome surgery. The manifest error rule applies to findings made by hearing officers in workers' compensation cases, and an appellate court may not reverse when there is a choice between two permissible views of the evidence. Alexander v. Pellerin Marble and *1198 Granite, 93-1698 (La. 1/14/94); 630 So.2d 706. In addition, the ruling by the hearing officer that penalties and attorney's fees are due is primarily a factual determination that should not be changed upon review unless clearly wrong or manifestly erroneous. Vernon v. Wade Correctional Institute, 26,053 (La.App. 2 Cir. 8/19/94); 642 So.2d 684; Bradley v. Justiss Oil Co., Inc., 618 So.2d 646 (La.App. 2 Cir.1993).
The Louisiana Supreme Court in Bruno v. Harbert International, Inc., 593 So.2d 357 (La.1992) stated that the hearing officer's determination on credibility and whether a worker has discharged his burden of proof are not to be disturbed on review unless clearly wrong or where manifest error is shown. After our review of the record, we can find no manifest error on the part of the hearing officer.
Dr. Fritchie recommended surgery on January 11, 1995, and set that surgery for January 20, 1995. On January 20, 1995, the record indicates that Dr. Fritchie canceled surgery because he believed that the defendant wanted a second opinion as to that surgery. He further stated on January 19, 1995, that the surgery should still be done in order to further treatment. Dr. Fritchie's next entry in the record dated January 24, 1995, specifically states that Keith Smith, agent for defendant, authorized a nerve conduction study with Dr. Haj Murad only and "at this time, we will not authorize surgery."
For a period of five months, Dr. Fritchie continued to express his belief that the plaintiff needed the carpal tunnel surgery. Up until June 7, 1995, two weeks before this matter went to trial, Dr. Fritchie stated that the carpal tunnel syndrome surgery was being deferred because appellant would not authorize the surgery.
The record indicates that the defendant clearly knew that Dr. Fritchie was recommending surgery. Mr. Smith, the defendant's agent, indicated that he denied the surgery based in part upon Dr. Goodman's comments of some six months earlier that surgery was not needed. Mr. Smith also indicated that he wanted a second opinion, but failed to follow the proper procedures to obtain the second opinion.
Workers' compensation handlers cannot blindly rely on earlier optimistic medical reports when presented with medical information showing disability. Such reliance will result in the imposition of penalties and attorney's fees. Johnson v. Insurance Company of North America, 454 So.2d 1113 (La. 1984).
The record indicates that the defendant knew that the plaintiff's treating physician, Dr. Fritchie, had recommended surgery for the carpal tunnel syndrome over a period of several months. Defendant persistently denied authorization for this surgery, but never took the proper course of action in gaining a second opinion. Instead, defendant based its denial upon Dr. Goodman's comments of some six months earlier that surgery was not needed. This reliance was misplaced and compels our conclusion that the hearing officer made the proper decision in finding that the defendant acted arbitrarily and capriciously in not authorizing the surgery which was recommended by the treating physician.
We further agree that the defendant is responsible for paying all the diagnostic tests which were performed to reach a proper diagnosis. Eglin v. United Gas Pipeline, 93-1179 (La.App. 3 Cir. 4/6/94); 635 So.2d 599. Therefore, we hold that the award of all of the diagnostic expenses in the amount of $1,347.85 as awarded by the hearing officer is supported by the record and will not be disturbed.

CONCLUSION
For the foregoing reasons, the judgment of the Office of Workers' Compensation is affirmed at defendant's costs.
AFFIRMED.