678 So.2d 627 (1996)
Ronald FAUL, Plaintiff-Appellant,
v.
Tilden A. BONIN, Contractor, Defendant-Appellee.
No. 95-1236.
Court of Appeal of Louisiana, Third Circuit.
August 7, 1996.
*628 Thomas Joseph DeJean, Felix Anthony DeJean III, Opelousas, for Ronald Faul.
William Michael Stemmans, Thomas J. Adair Jr., Baton Rouge, for Tilden A. Bodin Contractor.
Before COOKS, DECUIR, PETERS, AMY, and GREMILLION, JJ.
GREMILLION, Judge.
The plaintiff, Ronald Faul, appeals a decision of the Office of Workers' Compensation Administration awarding him temporary total *629 disability benefits and medical expenses. The hearing officer further held that the defendant, Tilden A. Bonin Contractor, Inc., a self-insured corporation, was not arbitrary or capricious in its handling of Faul's claim, thus denying his claim for penalties and attorney's fees.
After a hearing on the merits, the hearing officer concluded that Faul suffered an accident on August 30, 1994, while employed as a painter/sheetrock finisher for Bonin. She held that Faul reached maximum medical improvement on May 3, 1995, and awarded him temporary total disability benefits in the amount of $267.00 per week for the period between August 30, 1994 and May 3, 1995. However, the hearing officer found that any residual disability suffered by Faul could be attributed to his preexisting condition, and as a result, Bonin was not responsible for the payment of any benefits or medical bills incurred by Faul after May 3, 1995, nor was it responsible for his recommended surgery. The hearing officer finally held that Bonin was not arbitrary, capricious, or without reasonable cause in its failure to initially pay indemnity or medical benefits, or authorize the surgery.
After reviewing the record, we find that the hearing officer committed manifest error and was clearly wrong in finding that Faul reached maximum medical improvement on May 3, 1995. For this reason, we reverse her determination that Faul's entitlement to temporary total disability benefits ended on May 3, 1995, and award penalties and attorney's fees because of Bonin's arbitrary, capricious, and wilful refusal to pay benefits.

FACTS
On August 30, 1994, Faul was employed by Bonin as a painter and a sheetrock finisher. A sheetrock finisher applies a sheetrock compound, commonly called "mud," to a wall in order to prepare it for painting. One way of applying mud to a wall is by placing the mud on a "blade" and applying the blade to the wall with the use of pressure so that the mud is transferred to the wall in an up and down motion. Faul was instructed to "float" a wall heavily, or in other words, place a large amount of mud on the wall. He was holding a twelve inch blade in his right hand and a pan of mud in his left hand, and had just squatted down while applying mud to the bottom of the wall. While he was rising up to a standing position, he felt a stabbing pain in his back, which cut his breath. He was unable to straighten up, so he twisted around thinking that he pulled a muscle in his back. A co-worker, Leander "Duke" Williams, Jr., witnessed the accident and heard Faul say "ow." When questioned by Williams, Faul said he had a catch in his back and that the pain was getting worse. Fifteen to twenty minutes after the accident, Faul was taken to the Lafayette General Hospital.
In the emergency room, Faul complained of pain in his lower back radiating down into his legs. A CT scan was performed, revealing a large focal disc herniation at the L4-5 level, which was central and left paracentral. It also revealed spondylolysis at the L5 level with grade I spondylolisthesis. The emergency room doctor diagnosed Faul as having low back pain with L5 radiculitis and an intervertebral disc herniation of the L4-5 disc. Faul was given the name of Dr. Thomas Butaud, an orthopedic surgeon in Opelousas, and instructed to see him for further care.
Faul saw Dr. Butaud the next day, and complained of pain in his lower back and both legs, the right leg worse than the left. After examining him, Dr. Butaud studied the x-rays from the emergency room, which revealed a spondylolysis at L5-S1, with spondylolisthesis at L5-S1, and disc pathology at L4-5. He diagnosed Faul with a herniated disc and lumbosacral strain.
Dr. Butaud commenced treating Faul conservatively with medication and epidural steroids. The first epidural resolved some of Faul's symptoms, so a second epidural was scheduled, after which he still experienced discomfort. A third epidural was administered, but it also did little to resolve Faul's symptoms. He still experienced discomfort in his back and complained of a burning sensation in his legs and feet. Dr. Butaud requested Bonin's approval for a lumbar myelogram and CT scan. An MRI was performed on March 22, 1995, which revealed a moderate size central disc herniation at the *630 L4-5 disc level and bilateral defects of the pars L5 without associated subluxation. Dr. Butaud stated that Faul required surgical intervention; a discectomy at the L4-5 region along with a decompression at the L5-S1 interspace and a fusion from L4-S1.
Faul suffered two previous injuries to his back. The first injury occurred on December 29, 1978, when Faul was pulling cables off of an eighteen wheeler. On January 18, 1982, Faul was involved in a car accident and suffered another back injury. He was treated by Dr. James Lafleur both times. Following the first injury, Faul was diagnosed as having lumbosacral L5 spondylolisthesis, grade I. The second injury resulted in a diagnoses of lumbar L5-S1 spondylolisthesis, less than grade I, with superimposed lumbar myofascial strain. In 1979, Dr. Lafleur told Faul that the only alternative treatment he could recommend was surgery, a probable Gill procedure with posterolateral fusion, and evaluating him pre-operative for a herniated nucleus pulposus with lumbar myelography.
On February 14, 1995, Bonin had Faul examined by Dr. Lafleur for a second opinion. After reviewing the CT scan and the MRI, Dr. Lafleur's diagnoses was that Faul had low back pain secondary to lumbar L4-5 disc herniation, superimposed onto spondylolisthesis at L5-S1. Dr. Lafleur also recommended a discectomy at the L4-5 level, as well as a fusion, bilaterally, posterolaterally from L4 to the sacrum.

ISSUES
Two issues are presented by Faul on appeal: whether the hearing officer erred in finding that he reached maximum medical improvement on May 3, 1995, and in failing to award penalties and attorney's fees. On appeal, Bonin presents the issue of whether the hearing officer erred by failing to introduce into evidence the deposition of Dr. James Lafleur.

LAW
It has long been recognized by this state that the workers' compensation act is remedial in nature. "In order to effectuate the humane policies it reflects, the law is liberally construed in favor of the injured employee." Maxie v. Brown Industries, Inc., 95-19, p. 5 (La.App. 3 Cir. 5/31/95); 657 So.2d 443, 445.
A claimant in a workers' compensation action bears the burden of establishing by a preponderance of the evidence a causal connection between an employment accident and the disability he now complains of. Peveto v. WHC Contractors, 630 So.2d 689 (La. 1994). "In order for the employee to recover, it must be determined that the employment somehow caused or contributed to the disability, but it is not necessary that the exact cause be found." Walton v. Normandy Village Homes Ass'n, Inc., 475 So.2d 320 (La.1985). The claimant has carried his burden when the evidence, taken as a whole, shows that the fact sought to be proved is more probable than not. East v. Crying Eagle Construction, 95-560 (La.App. 3 Cir. 11/22/95); 664 So.2d 746, writ denied, 95-3077 (La. 2/16/96); 667 So.2d 1057.
A claimant suffering from a preexisting infirmity is not disqualified from receiving benefits if he proves that the "work-injury aggravated, accelerated, or combined with the disease or infirmity to produce death or disability for which compensation is claimed." Walton, 475 So.2d at 324. In such cases, the claimant is aided by a presumption recognized in Walton:
[W]hen an employee proves that before the accident he had not manifested disabling symptoms, but that commencing with the accident the disabling symptoms appeared and manifested themselves thereafter, and that there is either medical or circumstantial evidence indicating a reasonable possibility of causal connection between the accident and the activation of the disabling condition, the employee's work injury is presumed to have aggravated, accelerated or combined with his preexisting disease or infirmity to produce his disability.
Id. at 691.
Once the claimant establishes the presumption of causation, the burden shifts to the employer to present evidence and persuade the trier of fact that more probably than not the work injury did not accelerate, *631 aggravate, or combine with the preexisting infirmity to produce the claimant's disability. Peveto, 630 So.2d 689.
In order to receive compensation for temporary total disability, the claimant must prove by clear and convincing evidence, unaided by any presumption of disability, that he is physically unable to engage in any employment or self-employment. La.R.S. 23:1221(1)(c). "To prove a matter by clear and convincing evidence means to demonstrate that the existence of a disputed fact is highly probable; that is, much more probable than its nonexistence." Bundren v. Affiliated Nursing Homes, 94-808, p. 2 (La.App. 3 Cir. 2/1/95); 649 So.2d 1177, 1179.
In her reasons for judgment, the hearing officer stated:
Although, Faul may have worked without pain for some time prior to the date of loss, in this case, the fact of the matter is that on two separate occasions surgery was recommended to relieve his back problems and twice refused. Perhaps, Faul's condition is disabling, at this time, but this Court does not find that it is anymore disabling than it was in the years prior to the date of loss. Additionally, Dr. Butaud opined that, if no surgery was performed, Faul reached maximum medical improvement on or about May 3, 1995.
It is well-settled that so long as the employee is disabled from the aggravation of a pre-existing defect, he is entitled to compensation. However, where the aggravation ceases and the employee's continued disability, if any, results solely form (sic) the pre-existing defect, compensation is no longer due. This Court finds that based on the evidence presented, Faul reached maximum medical improvement on May 5, 1995 [1], and at that time returned to his pre-injury condition.
(Footnote added).
Dr. Butaud was the only medical expert to testify concerning Faul's condition. In his deposition, Dr. Butaud testified that Faul's injury on August 30, 1994, was the cause of his present disability. He based his opinion on the fact that Faul never suffered leg pain severe enough to prompt his doctors to order diagnostic tests in either 1979 or 1983. He stated that it was possible that Faul's spondylolysis may have caused some leg pain, but not the writhing type of leg pain which he now experiences. The immediate leg pain experienced by Faul, along with the back pain, indicated to Dr. Butaud that Faul herniated his disc on August 30, 1994. All of the examinations and tests run on Faul were consistent with a herniated disc at the L4-5 disc level.
Dr. Butaud studied Faul's prior records, and determined that the surgery recommended by Dr. Lafleur in 1979 was only a portion of the procedure Dr. Butaud advised. In addition to the Gill laminectomy and fusion at the L5-S1 disc level, Dr. Butaud recommended a discectomy at the L4-5 level to repair Faul's herniated disc. This was not mentioned in Dr. Lafleur's reports. Dr. Butaud conceded that the spondylolysis may have contributed to the degeneration of the L4-5 disc level by resulting in hyper-mobility at that level. However, when Faul squatted down and then stood up, he was applying six times his body weight in pressure to the L4-5 disc space, causing the disc to blow out at that moment. Dr. Butaud also opined that he had patients with spondylolysis who were able to resolve their symptoms to a point where they did not require surgery.
In a progress report to Susan Mack, a claims adjustor with the Claim Center, the third party administrator for Bonin's self-insured fund, Dr. Butaud stated that Faul's current work status, if he did not have the surgery, was sedentary. He recommended that Faul not engage in any lifting or bending. The only other treatment Dr. Butaud could offer Faul was surgery. He opined that if Faul had the surgery, there was only a 2% chance that he would be able to return to his former employment.
Faul and his wife testified at the hearing on the merits that following his back injuries of 1979 and 1982, and subsequent recuperation *632 he experienced no significant back problems. Faul received social security disability benefits following the 1982 accident, but was released for work after he was found to be fit to perform his job duties. Since that time, he has worked continuously with only minor back complaints (a little stiffness in cold weather). Over the last few years, he has labored as a sheetrock finisher and painter and has not needed any medical care for his back.
Based on the evidence in the record, we find that the hearing officer was manifestly erroneous in finding that Faul reached maximum medical improvement with regards to the present injury on May 3, 1995, and that any residual disability resulted from his previous injuries. Dr. Butaud opines that Faul will not reach maximum medical improvement until he has surgery. Faul has not refused the surgery, rather he has requested it; thus, he is not at maximum medical improvement. For the foregoing reasons, we find that Faul is temporarily totally disabled and is entitled to compensation benefits in the amount of $267.00 from August 30, 1994, until the resolution of his disability. We further find that Faul is entitled to the surgery recommended by Dr. Butaud.

PENALTIES AND ATTORNEY'S FEES
A workers' compensation claimant is entitled to penalties and attorney's fees if benefits are withheld or terminated arbitrarily, capriciously, or without reasonable cause by the employer. La.R.S. 23:1201; 23:1201.2. The purpose of the penalty provision is to discourage an attitude of indifference toward the injured employee. Spinks v. Dept. Of Health and Human Res., 591 So.2d 423 (La.App. 3 Cir.1991), writ granted in part, 595 So.2d 648 (La.), on remand, 605 So.2d 1384 (La.App. 3 Cir.1992). To avoid the imposition of penalties, an employer must reasonably controvert the claimant's right to compensation. La.R.S. 23:1201(E). Maxie, 657 So.2d 443. The test to determine if the employer has fulfilled its duty is whether the employer or his insurer had sufficient factual and medical information to reasonably counter the factual and medical information presented by the claimant. Thibodeaux v. L.S. Womack, Inc., 94-1375 (La.App. 3 Cir. 4/5/95); 653 So.2d 123; Penn v. Wal-Mart Stores, Inc., 93-1262 (La.App. 3 Cir. 6/15/94); 638 So.2d 1123, writ denied, 94-1835 (La. 10/28/94); 644 So.2d 651. As will be shown, Bonin did not present sufficient evidence to counter the factual and medical evidence presented by Faul.
Mack, who handled Faul's claim, never approved workers' compensation or medical benefits because she did not feel that Faul suffered an accident. Her interpretation of the accident was that:
Mr. Faul was in a squatting position, moving in a standinggoing to a standing position and on that (sic) say from squatting to standing had a catch in his back.
Mack felt that this was not compensable under the Workers' Compensation Act because Faul was not injured by a sudden precipitous event.
Mack took statements from Williams and Todd Viator, the vice-president of Bonin, who took Faul to the hospital, corroborating what happened to him. She also had the emergency room records, which showed that Faul complained of a sudden onset of pain as a result of the accident. When questioned as to why she still refused to approve compensation benefits, Mack testified that her refusal was based on the medical records from Dr. Lafleur.
However, Dr. Lafleur's reports never indicated that Faul had a herniated disc in either 1979 or 1983. Dr. Lafleur's 1979 diagnosis was lumbosacral L5 Spondylolisthesis, grade I. His 1983 diagnosis was lumbar L5-S1 spondylolisthesis, less than grade I, with superimposed lumbar myofascial strain. The surgery he recommended in 1979 was to correct Faul's spondylolisthesis, not a herniated disc at L4-5.
During the course of the litigation, Mack received numerous inquiries from Faul's counsel, and several reports and requests for tests from Dr. Butaud. Faul's counsel sent Mack letters dated September 24, October 21 and 28, December 8 and 19, 1994, and January 20, 1995. Mack also received a letter from Faul's wife concerning her refusal to approve an epidural. Mack never answered *633 any of these letters. Her reason being that Faul's claim was in litigation and her company was represented by an attorney. She testified that she told the company's attorney to correspond with Faul's attorney and directed him to answer any correspondence received by her concerning the case. However, she did not know if the attorney received any of the above letters, unless Faul's attorney sent them directly to him.
Dr. Butaud sent the Claim Center a report covering his initial examination of Faul and several progress reports thereafter in which he requested approval for a myelogram and a CT scan. In a letter sent to Faul's counsel, which was also sent to Mack, Dr. Butaud stated that he thought Faul's present back injury was a result of the August 30, 1994 accident. As to Faul's prior injuries, he opined that he could not comment on them, other than to say that Faul had gotten better and had no residual problems from those injuries.
Mack never approved any of the tests requested by Dr. Butaud, presumably because Faul's claim was in litigation. She testified that she was waiting for both Faul's and Dr. Butaud's depositions to be taken so she could clear up questions she had concerning the accident and the injury. However, after Dr. Butaud's deposition, which was consistent with his letter to Faul's counsel, Mack still refused to approve compensation benefits. At this point, six months after the accident, Mack scheduled an appointment for Faul with Dr. Lafleur for a second opinion. Even after Dr. Lafleur's report, which was consistent with Dr. Butaud's reports, Mack refused to authorize benefits. Instead, she scheduled Faul for the myelogram requested by Dr. Butaud in preparation for surgery. However, Faul refused to take this test, because Dr. Butaud could not promise him that he would not need a second myelogram if surgery was not performed shortly after the first myelogram.
After reviewing the evidence, we find that Bonin failed to reasonably controvert Faul's right to compensation, thus, its refusal to pay temporary total disability benefits and to approve and timely pay medical expenses was arbitrary, capricious, and without reasonable cause. There is no reasonable explanation for Mack's refusal to approve benefits. The overwhelming evidence points to the August 30, 1994 accident as being the cause of his present disability. Faul is entitled to penalties in the amount of twelve percent of all unpaid compensation and unpaid medical expenses from the date of the injury, August 30, 1994, until Bonin commences payment of compensation, or $2,000.00, whichever is greater. La.R.S. 23:1201(E). We also find that Faul is entitled to attorney's fees, in the amount of $7,500.00, in view of the efforts put forth by counsel in preparing the litigation in the court below and at this level. La.R.S. 23:1201.2. See also Earlyn Carrier, Jr. v. Debarge's College Junction, 95-18 (La.App. 3 Cir. 9/27/95); 673 So.2d 1043, writ denied, 96-472 (La. 4/8/96); 671 So.2d 337; George v. M & G Testing and Services, Inc., 95-31 (La.App. 3 Cir. 7/19/95); 663 So.2d 79; Sinegal v. Able Glass Co., Inc., 95-10 (La.App. 3 Cir. 10/11/95); 663 So.2d 393; and Maxie, 657 So.2d 443.

DEPOSITION
The hearing in this matter was originally set for March 29, 1995. Two days prior to that date, on March 27, Bonin filed a Motion and Order for Continuance, requesting the hearing officer to continue the hearing because it wished to take Dr. Lafleur's deposition and update Faul's. Bonin further alleged that because Faul failed to appear at his scheduled myelogram, it needed further time to sort out his claim. The hearing officer granted the motion and rescheduled the hearing for May 11, 1995.
On April 24, 1995, counsel for Bonin mailed a notice of deposition to Faul's counsel, stating that he was taking Dr. Lafleur's deposition on May 9, 1995, two days before the hearing. Counsel for Faul was unable to attend the deposition on that date because of a prior commitment. During the hearing, Faul objected to the admission of the deposition based on the ground that Bonin's counsel scheduled the deposition without clearing the date with him first. Bonin argued that Faul had reasonable notice of the deposition, and that the only date Dr. Lafleur was available for a deposition was on May 9. After *634 hearing argument, the hearing officer excluded the deposition because counsel for Bonin failed to extend a courtesy to Faul's counsel in scheduling the deposition, and because Bonin delayed scheduling the deposition for a month after requesting the continuance.
The decision of whether to allow the introduction of a deposition into evidence rests within the sound discretion of the hearing officer, and her decision will not be reversed on appeal unless it is manifestly erroneous. DeRosier v. South Louisiana Contractors, 583 So.2d 531 (La.App. 3 Cir.1991); Streeter v. Sears, Roebuck & Co., Inc., 533 So.2d 54 (La.App. 3 Cir.1988). In this case, we can not say that the hearing officer's decision to exclude the deposition was an abuse of discretion.
Bonin asked for a continuance on March 27, 1994, listing as one of its reasons, the need to take Dr. Lafleur's deposition. However, Bonin waited one month before noticing the deposition for May 9, which was two days before the rescheduled trial. Had Bonin attempted to schedule the deposition shortly after March 27, Dr. Lafleur may have had more available dates. At least Faul's counsel would have considerably more time to adjust his schedule so that he could attend the deposition on May 9. Under these circumstances, we cannot say the hearing officer abused her vast discretion in excluding the deposition. This assignment of error lacks merit.

CONCLUSION
For the foregoing reasons, we reverse the hearing officer's finding and award Ronald Faul temporary total disability benefits from May 3, 1995 until his disability is resolved. We further find that he is entitled to the recommended back surgery. As a result of the arbitrary and capricious actions of Tilden A. Bonin Contractor, Inc., we award Faul penalties of 12% on all of his unpaid medical expenses and compensation benefits, from the date of August 30, 1994, or $2,000.00, whichever amount is greater, and attorney's fees in the amount of $7,500.00. Finally, we find that the hearing officer did not abuse her discretion by excluding the deposition of Dr. Lafleur at the hearing on the merits.
All costs of this appeal are assessed against the defendant-appellee, Tilden A. Bonin Contractor, Inc.
REVERSED AND RENDERED.
AMY, J., concurs.
PETERS, J., concurs in the result.
DECUIR, J., dissents with reasons.
DECUIR, Judge, dissenting.
I respectfully disagree with the majority opinion. Application of the rules of appellate review to the circumstances of this case clearly demands an affirmation of the hearing officer's ruling.
The Louisiana Supreme Court summarized the manifest error/clearly wrong standard in the case of Rosell v. ESCO, 549 So.2d 840, 844-845 (La.1989), as follows:
It is well settled that a court of appeal may not set aside a trial court's or a jury's finding of fact in the absence of "manifest error" or unless it is "clearly wrong," and where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. Arceneaux v. Domingue, 365 So.2d 1330, 1333 (La.1978); Canter v. Koehring, 283 So.2d 716, 724 (La.1973). See also, Sevier v. United States Fidelity & Guaranty Co., 497 So.2d 1380, 1383 (La.1986); West v. Bayou Vista Manor, Inc., 371 So.2d 1146, 1150 (La.1979); Davis v. Owen, 368 So.2d 1052, 1056 (La.1979); Cadiere v. West Gibson Products Co., 364 So.2d 998, 999 (La. 1978); A. Tate, "Manifest Error" Further observations on appellate review of facts in Louisiana civil cases, 22 La.L.Rev. 605, 611 (1962). The appellate review of facts is not completed by reading only so much of the record as will reveal a reasonable factual basis for the finding in the trial court, but if the trial court or jury findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse even though convinced that had it been sitting as the trier of fact, it would *635 have weighed the evidence differently. Where there are two permissible views of the evidence, the factfinder's choice between them cannot be manifestly erroneous or clearly wrong. Arceneaux, supra at 1333, Watson v. State Farm Fire & Casualty Ins. Co., 469 So.2d 967 (La.1985). In applying the manifestly erroneous clearly wrong standard to the findings below, appellate courts must constantly have in mind that their initial review function is not to decide factual issues de novo. See, F. Maraist, The Work of the Louisiana Appellate Courts for the 1978-1979 TermA Faculty Symposium, Civil Procedure, 40 La.L.Rev. 761, 764 (1980); Comment, Appellate Review of Facts in Louisiana Civil Cases, 21 La.L.Rev. 402, 412 (1961); Cf. Anderson v. City of Bessemer City, 470 U.S. 564, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985); Zenith Radio Corp. v. Hazeltine Research, Inc., 395 U.S. 100, 89 S.Ct. 1562, 23 L.Ed.2d 129 (1969).
When findings are based on determinations regarding the credibility of witnesses, the manifest errorclearly wrong standard demands great deference to the trier of fact's findings; for only the factfinder can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding and belief in what is said. Canter, supra at 724; Virgil v. American Guarantee & Liability Ins. Co., 507 So.2d 825, 826 (La.1987); Boulos v. Morrison, 503 So.2d 1, 3 (La.1987); Williams v. Keystone General Contractors, Inc., 488 So.2d 999, 1001 (La.1986); Johnson v. Insurance Co. of North America, 454 So.2d 1113, 1117 (La.1984); Berry v. Livingston Roofing Co., 403 So.2d 1247, 1249 (La.1981); Crump v. Hartford Accident & Indemnity Co., 367 So.2d 300, 301 (La.1979). Where documents or objective evidence so contradict the witness's story, or the story itself is so internally inconsistent or implausible on its face, that a reasonable fact finder would not credit the witness's story, the court of appeal may well find manifest error or clear wrongness even in a finding purportedly based upon a credibility determination. See, Wilson v. Jacobs, 438 So.2d 1119 (La.App. 2d Cir. 1983), writ denied, 443 So.2d 586 (La.1983). Cf. State v. Mussall, 523 So.2d 1305 (La. 1988); Anderson v. City of Bessemer City, 470 U.S. 564, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985); U.S. v. U.S. Gypsum Co., 333 U.S. 364, 68 S.Ct. 525, 92 L.Ed. 746 (1948). But where such factors are not present, and a factfinder's finding is based on its decision to credit the testimony of one of two or more witnesses, that finding can virtually never be manifestly erroneous or clearly wrong. See, Jackson v. Tate, 428 So.2d 882, 884 (La.App. 1st Cir.1983), citing McDonald v. Book, 215 So.2d 394 (La. App. 3d Cir.1968), overruled on other grounds, Celestine v. Hub City Motors, Inc., 327 So.2d 700 (La.App. 3d Cir.1976). Cf. Anderson, supra, at 575, 105 S.Ct. at 1512; Schexnider v. McDermott International, Inc., 868 F.2d 717, 720 (5th Cir. 1989); Employers Ins. of Wausau v. Suivannee River Spa Lines, Inc., 866 F.2d 752, 770 (5th Cir.1989); U.S. v. Hibernia National Bank, 841 F.2d 592, 595 (5th Cir.1988); Hanson v. Veterans Administration, 800 F.2d 1381, 1388 (5th Cir.1986). (Footnote omitted). (Emphasis added).
The plaintiff's contention that his current disability is a result of the incident of August 30, 1994, and not the incidents which occurred in 1979 and 1983, was found to be without merit by the trier of fact. The hearing officer obviously disbelieved the testimony of both plaintiff and his wife that following two previous back injuries, plaintiff experienced no significant back problems. Specifically, the hearing officer noted that on two separate occasions in 1979 and in 1983, surgical intervention was recommended by Dr. James Lafleur, and twice plaintiff refused to undergo the recommended procedure. Based on the medical evidence, the hearing officer found that plaintiff's condition was no more disabling than it was in the years prior to the accident at issue. Furthermore, the hearing officer found that plaintiff reached maximum medical cure based on Dr. Butaud's opinion that if no surgery was performed, plaintiff reached maximum medical improvement on or about May 3, 1995.
In reversing the hearing officer's findings, the majority is selective in its recitation of the facts and disregards the rules of appellate *636 review by ignoring all record evidence unfavorable to the plaintiff. The majority places much emphasis on Dr. Butaud's opinion that the incident of August 30, 1994, was the cause of plaintiff's present disability. The majority is selective in its review of Dr. Butaud's testimony. Reviewing the record in its entirety, it is clear that Dr. Butaud's opinion is based on the fact that plaintiff ostensibly never suffered leg pain severe enough to prompt his physicians to order diagnostic tests in either 1979 or 1983. The majority fails or refuses to take into account that Dr. Butaud's opinion is largely based on the history related to him by the plaintiff, and whether the history as related by plaintiff is accurate involves a credibility determination. The majority fails to mention the fact that Dr. Butaud testified that plaintiff never told him of his previous right leg pain reflected in medical reports of Dr. James Lafleur from 1979 and 1983. The majority also neglects to mention that Dr. Butaud conceded in deposition testimony that he cannot say that plaintiff's present condition is worse than it was in 1979. Furthermore, Dr. Butaud assumed that plaintiff's condition had improved in the past to a point where surgery was not required, while in fact plaintiff refused surgery on two previous occasions despite recommendations by his physician. Interestingly, although the majority states that plaintiff has not refused the surgery recommended by Dr. Butaud, the record reflects that despite the fact that a myelogram was recommended by both Drs. Butaud and Lafleur prior to surgery, plaintiff refused to undergo a myelogram even though the defendant approved and scheduled the procedure. Plaintiff's credibility is clearly questionable as reflected by Dr. Butaud's testimony. Credibility calls are the function and prerogative of the trier of fact. Holmes v. International Paper Co., 559 So.2d 970 (La.App. 2 Cir.1990); Bruno v. Harbert Intern., Inc., 593 So.2d 357 (La. 1992). The hearing officer obviously disbelieved the plaintiff and recognized that Dr. Butaud's opinion was flawed based on the inaccurate history presented to him by the plaintiff. Considering the law and the evidence, the hearing officer's findings, based on our well-established rules of appellate review, should be affirmed.
Furthermore, in light of plaintiff's medical history and documented evidence that plaintiff's injury was ongoing at least since 1983, the majority's award of penalties and attorney's fees is unjustified, and once again, represents a departure from our well recognized manifest error standard of review. The record clearly reflects that the defendant had sufficient factual and medical information to reasonably controvert plaintiff's claim and in no way acted arbitrarily and capriciously.
Applying the rules of appellate review as enunciated by our supreme court in Rosell, 549 So.2d at 844-845, it is inconceivable that the ruling below should be reversed. Accordingly, I respectfully dissent and would affirm the hearing officer's ruling.
NOTES
[1] In her reasons for judgment, the hearing officer lists the date that Faul reached maximum medical improvement as both May 3, 1995 and May 5, 1995. Since May 3, 1995 is shown as the date of maximum medical improvement in the judgment, this is the date used in this opinion.