692 So.2d 1320 (1997)
Lincoln GIBSON, Plaintiff-Appellant,
v.
DYNAMIC INDUSTRIES, INC. and The Gray Insurance Company, Defendants-Appellees.
No. 96-1605.
Court of Appeal of Louisiana, Third Circuit.
April 2, 1997.
*1321 Lawrence N. Curtis, Clint D. Bischoff, Lafayette, for Lincoln Gibson.
Joseph A. Reilly Jr., Houma, for Dynamic Industries, Inc.
*1322 Before DOUCET, C.J., and YELVERTON and WOODARD, JJ.
YELVERTON, Judge.
Whether penalties and attorney's fees should be awarded was the sole issue presented and decided in this workers' compensation case. The hearing officer found that penalties and attorney's fees were not justified. For the following reasons, we reverse and make an award.
Lincoln Gibson was employed by Dynamic Industries, Inc. as a welder. On January 29, 1995, he was working off the coast of Tunisia, Africa when he was in an accident. Gibson and a co-worker were trying to pick up a 22-foot ladder which extended to 40 feet. The ladder fell, and Gibson tried to hold off the ladder to keep it from falling on top of him. He injured his back and was taken to see a doctor in Tunisia.
A CAT scan at the African hospital indicated a midline bulge at L5-S1. The doctor there wanted to perform surgery, but Gibson wanted to come back to the United States for further treatment.
Once back in the United States, Gibson and his wife went to see Jimmy Roy, the safety director at Dynamic. Gibson then went to see Dr. Clifton Shepherd, an orthopedic surgeon, on February 9, 1995. A CAT scan and MRI later revealed a central and left lateral disc herniation with possible displacement of the left S-1 nerve root. On March 13, 1995, Dr. Shepherd released Gibson back to his regular duties as a welder. Dr. Shepherd explained that since the disc problem was on the left side, Gibson should be experiencing pain on the left side. Since Gibson had no complaints of pain on the left side, Dr. Shepherd did not see that the disc was causing the problems Gibson was experiencing. Dr. Shepherd opined that Gibson had sprained his back.
With this information, on March 13, 1995, Dynamic discontinued the temporary total disability benefits that it had been paying Gibson. Gibson then hired an attorney who sent him to see Dr. Louis Blanda, another orthopedic surgeon.
Dr. Blanda first saw Gibson on April 4, 1995. Dr. Blanda's physical examination revealed that Gibson had pain in both of his legs but that the right leg was more painful. Dr. Blanda saw Gibson on June 1, 1995, and at that time recommended a CAT scan with contrast or a myelogram. If the results of those tests correlated with Gibson's symptoms that he had a herniated disc, then he recommended surgery. Dr. Blanda was also of the opinion that if Gibson did heavy work, he was at risk of further injury.
On June 22, 1995, Gibson's attorney sent a letter to Larry Foreman at Dynamic. Foreman was the branch claims manager for The Gray Insurance Co. (Gray Insurance) which insured Dynamic. This letter informed Foreman of Gibson's treatment by Dr. Blanda. Dr. Blanda's medical reports were enclosed. It was requested that Gray Insurance authorize treatment by Dr. Blanda particularly the request for a CAT scan. There was also a request to reinstate benefits. Gray Insurance replied on June 29, 1995, that it would not pay the charges of Dr. Blanda because Dr. Shepherd was Gibson's first choice of orthopedic surgeon.
Subsequently, Gibson filed a claim for benefits on October 27, 1995. It was at a mediation conference in early December 1995, that Foreman requested an independent medical examination (IME). On February 13, 1996, the Office of Workers' Compensation denied Foreman's request for an IME finding that the evidence did not present a medical or factual dispute as required by La.R.S. 23:1123. Foreman testified that it was his understanding that Dr. Blanda could not recommend surgery until a myelogram was performed to confirm his diagnosis. He interpreted that to mean that both Dr. Shepherd and Dr. Blanda agreed before the myelogram that no surgery was necessary. Therefore, he felt there was no medical conflict.
Foreman then decided to authorize the myelogram so Dr. Blanda could get the information he wanted to recommend surgery and create a conflict so that they could get an IME. The myelogram was performed on April 29, 1996. Dr. Blanda examined Gibson again on May 2, 1996. The myelogram indicated that Gibson had a significant central *1323 and left-sided disk at the L5-S1 level that was causing bilateral nerve compression. Gibson was still having very intense back and left leg pain. At that time, Dr. Blanda recommended surgical treatment which would consist of a bilateral diskectomy and fusion at L5-S1.
An IME by Dr. James Butler was then ordered by the Office of Workers' Compensation. Dr. Butler evaluated Gibson on May 22, 1996. Dr. Butler explained that there had been some confusion about which leg predominated in pain but further questioning of Gibson, who has a slight communication problem due to his hearing problems, revealed that Gibson had complaints of right knee pain as well as left leg pain and numbness. Dr. Butler stated that Gibson's present complaints of back and left leg pain correlated with the myelogram and post myelogram CAT scan as well as the MRI. Dr. Butler attributed Gibson's present complaints to the on-the-job injury and agreed with the indications for surgery as recommended by Dr. Blanda.
Thereafter, Gray Insurance reinstated Gibson's compensation benefits back to the date they were terminated. It also authorized the recommended surgery which was scheduled for August 7, 1996.
A hearing limited to the issue of penalties and attorney's fees was held on June 28, 1996. After considering all the evidence, the hearing officer found that Gray Insurance's actions had the appearance of propriety and denied penalties and attorney's fees.

PENALTIES AND ATTORNEY'S FEES
Gibson has asserted three bases for finding Dynamic liable for penalties and attorney's fees: (1) for terminating benefits and medical treatment on March 13, 1995, and relying on Dr. Shepherd, without fully investigating Gibson's medical condition; (2) for failing to reinstate benefits after being put on notice of new medical evidence; and (3) for failing to recognize Dr. Blanda as Gibson's first choice of physician.
A hearing officer's ruling with regard to penalties and attorney's fees is primarily a factual determination that should not be changed upon review unless clearly wrong or manifestly erroneous. Scott v. Town of Jonesville, 96-41 (La.App. 3 Cir. 7/3/96), 676 So.2d 1196. We find manifest error in this case.
It is settled that a workers' compensation claimant is entitled to penalties and attorney's fees if benefits are withheld or terminated arbitrarily, capriciously, or without reasonable cause by the employer. La. R.S. 23:1202 and La.R.S. 23:1201.2; Faul v. Bonin, 95-1236 (La.App. 3 Cir. 8/7/96), 678 So.2d 627, writ denied, 96-2221 (La.11/15/96), 682 So.2d 769. "The test to determine if the employer has fulfilled its duty is whether the employer or his insurer had sufficient factual and medical information to reasonably counter the factual and medical information presented by the claimant." Faul v. Bonin, 678 So.2d at 632.
The hearing officer found, and we agree, that when Dr. Shepherd released Gibson to return to his regular work duties on March 13, 1995, no further benefits were owed. There was no medical evidence to indicate otherwise. Dr. Shepherd had thoroughly investigated Gibson's condition for several months and opined that the complaints he had observed in Gibson were not caused by the disc herniation. It was not unreasonable to rely on Dr. Shepherd's opinion at that time.
However, the hearing officer was manifestly erroneous in finding that Gray Insurance acted reasonably when it got Dr. Blanda's records. The hearing officer found as a fact that Foreman, on behalf of Gray Insurance, suggested to Gibson's attorney that they get a third doctor's opinion which was declined. However, the hearing officer found that this occurred prior to the disputed claim for compensation being filed in October. A review of the record reveals that this was incorrect. Foreman testified that he first suggested that they get an IME at the mediation conference in December. We realize that the hearing officer did not have the benefit of a transcript of the hearing as this court does, but find this was error and make a de novo review of this particular aspect of the case.
*1324 When Gray Insurance got notice, in June 1995, indicating that Dr. Blanda felt that further diagnostic studies should be performed and that he did not feel that Gibson could return to regular employment, it should have investigated further. Gray Insurance did not take action, relying on Dr Shepherd's earlier report, until December at the mediation conference. This was some six months after receiving the medical reports of Dr. Blanda.
"Workers' compensation handlers cannot blindly rely on earlier optimistic medical reports when presented with medical information showing disability." Scott, 676 So.2d at 1198. "Such reliance will result in the imposition of penalties and attorney's fees." Id at 1198.
Although the Office of Workers' Compensation found that there was no conflict in the medical evidence based on these two doctor's reports when considering the request for an IME, Dr. Blanda clearly thought that more studies needed to be done. He also opined that Gibson was not fit to return to work because he was at risk for further injury.
Foreman, Gray Insurance's claims manager, also testified that his experience with Dr. Shepherd was that his recommendations were based on whoever referred the patient to him. Although we are not rendering an opinion on who chose Dr. Shepherd in this case, Dr. Shepherd knew that Gray Insurance was paying for his services. Therefore, it would seem that, from Foreman's perspective, Dr. Shepherd would predictably lean towards a favorable recommendation for Gray Insurance. Aware of this fact as well as the new medical evidence presented by Dr. Blanda, Gray Insurance should have acted immediately by either going forward with the recommended testing or securing a third opinion. Instead, Gray Insurance waited until a claim had been filed against it and then, six months later at the mediation conference, decided to seek an IME.
We find that this conduct was unreasonable in light of the information that Gray Insurance had. We also find Gray Insurance's conduct to be arbitrary and capricious in not investigating the matter further to determine whether benefits should be reinstated. We therefore find that penalties and attorney's fees are appropriate in this case.
Factors used to calculate attorney's fees in workers' compensation cases are degree of skill and ability exercised, amount of claim, amount recovered, and amount of time devoted to case. Miller v. Roger Miller Sand, Inc., 95-1253 (La.App. 3 Cir. 3/13/96), 676 So.2d 1084, writ granted in part and reversed in part on other grounds, 96-2122 (La.11/22/96), 683 So.2d 295.
In the present case Gibson sought the services of an attorney in March 1995, after his benefits were terminated. The attorney then saw to it that Gibson got a second opinion. Based on that doctor's opinion, the attorney then sought to have further testing done and benefits reinstated. Gray Insurance failed to take any action to ascertain Gibson's true medical condition, and Gibson's attorney was forced to file a disputed claim on his behalf.
Finally, after attending a mediation conference, an IME was secured and Gray Insurance reinstated benefits a year after it received Dr. Blanda's medical report. A trial was then held on the issue of penalties and attorney's fees which was appealed to this court. Under these circumstances, we find that an award of $5,000 as attorney's fees is reasonable and appropriate.
Also, we find that the 12% percent or $50 per day penalty should be assessed against Gray Insurance since it was the party that caused the delay in ascertaining Gibson's true medical condition.
For the above reasons, the judgment of the Office of Workers' Compensation is reversed. It is ordered, adjudged, and decreed (1) that Lincoln Gibson is entitled to $5,000; (2) The Gray Insurance Company is ordered to pay statutory penalties of 12% of the total amount of past due temporary total disability benefits before they were reinstated or $50 per calendar day, whichever is greater, the $50 per day penalty not to exceed $2,000; and (3) all costs at the trial court level and on *1325 appeal are to be borne by Dynamic Industries and The Gray Insurance Company.
REVERSED AND RENDERED.