720 So.2d 785 (1998)
Mary DAVISON, Plaintiff-Appellee,
v.
HORSESHOE CASINO, INC., Defendant-Appellant.
No. 31,166-WCA.
Court of Appeal of Louisiana, Second Circuit.
October 28, 1998.
Degan, Blanchard & Nash by John E. Faherty, Jr., for Defendant-Appellant.
*786 Fischer & McMahon by Timothy R. Fischer, for Plaintiff-Appellee.
Before BROWN, STEWART and CARAWAY, JJ.
STEWART, Judge.
Mary A. Damson, an employee of Horseshoe Casino, Inc., was injured in a slip and fall accident that occurred during the course and scope of her employment. A dispute over workers' compensation benefits resulted in a lawsuit, and following a trial in October 1997, a judgement was rendered in favor of Ms. Davison for medical expenses, disability benefits, and penalties and attorney's fees. On appeal, Horseshoe argues not only that the administrative law judge erred in finding that Ms. Davison was owed temporary total disability benefits as a result of the 1995 accident, but also that the trial administrative law judge erred in awarding attorney's fees and penalties. In an answer to Horseshoe's appeal, Ms. Davison asserts not only that the $4,000 attorney's fee award is insufficient considering the time expended to pursue her claim, but also that she is entitled to an award of additional attorney's fees for the time expended on this appeal. For the reason set forth below, we affirm the judgment, but award Ms. Davison an additional $1,500 in attorney's fees related to this appeal.

FACTS
Ms. Davison slipped on a grape and fell while working as a busser at the Horseshoe Casino in Bossier City, Louisiana. After being taken to the emergency room at Bossier Medical Center, x-rays were taken of her right hip, knee, and ankle. Ms. Davison later would testify that she had difficulty lying on the x-ray table because of back pain, but no x-rays of her back were taken. The x-rays that were taken showed a fracture of the right ankle. Dr. Michael Acurio, an orthopedic surgeon, was called in to treat Ms. Davison.
Two days after her accident, Ms. Davison saw Dr. Acurio again. She later would testify that at the second visit she informed Dr. Acurio she had pain in her hip and back and muscle spasms up her back, in her shoulders, behind her neck, and extending under her left jaw. According to Ms. Davison, Dr. Acurio indicated that Ms. Davison had a "jaw problem", but she was not satisfied with this explanation. As a result, Ms. Davison went to see her regular physician, Dr. Carter Boyd, immediately after leaving Dr. Acurio's office. Dr. Boyd concluded that Ms. Davison was suffering from muscle spasms as a result of her fall. He prescribed Skelaxin, a muscle relaxer.
Ms. Davison continued to see Dr. Acurio for her fractured ankle during the next two months. His December 29, 1995, report noted complaints by Ms. Davison of pain in her back. His reports of January 17, 1996, and February 1, 1996, also noted complaints of back pain.
On February 8, 1996, Dr. Acurio released Ms. Davison to return to work. On February 12, 1996, Ms. Davison signed an acceptance form indicating that she agreed to return to light duty work. After working for several days on light duty jobs, her employment with Horseshoe was terminated when she failed to report to work.
Although Dr. Acurio had issued a medical narrative on December 4, 1995, indicating that Ms. Davison could not return to work, she did not receive any workers' compensation benefits until January 25, 1996. She received one other benefit check after she returned to light duty work, but no benefits were paid, nor was any medical treatment authorized by Horseshoe after February 12, 1996.
Several months later, Dr. Boyd wrote a letter that was forwarded to Horseshoe stating that Ms. Davison was continuing to have problems including muscle spasms in her back and shoulder, and that she was unable to work at that time. He indicated that he was ordering an MRI to determine the cause of her problems. However, Horseshoe did not reinstate Ms. Davison's workers' compensation benefits as a result of the letter, nor did Horseshoe authorize payment for any medical expenses.
Ms. Davison filed a claim for compensation benefits and medical expenses, and her claim proceeded to trial in October 1997. The *787 administrative law judge rendered a judgment in favor of Ms. Davison for all reasonable and necessary medical expenses, awarded her temporary total disability benefits from July 26, 1996 forward, denied her temporary total disability benefits and supplemental earning benefits from February 8, 1996 until July 26, 1996, and awarded her $2,000 in penalties and $4,000 in attorney's fees.
In oral reasons explaining the judgment, the administrative law judge indicated she had balanced Ms. Davison's testimony, Dr. Acurio's deposition testimony, and Dr. Boyd's deposition testimony. The judge indicated that while Dr. Acurio did not "answer the question", he indicated there was a possibility, and there may have been a probability, of an aggravation of disc herniations in Ms. Davison's spine. The judge also indicated that while Dr. Acurio was an expert, he could not "give clear testimony." Additionally, the judge noted Dr. Boyd's belief that there was an aggravation of Ms. Davison's disc problems, and noted that Dr. Boyd had been Ms. Davison's treating physician. The judge concluded that while the disc herniation problems were not caused by the accident, there was aggravation as a result of the accident.
With respect to penalties and attorney fees, the administrative law judge stated that benefits clearly weren't paid timely initially. Furthermore, the judge found a failure on the part of Horseshoe to coordinate the medical benefits appropriately. She stated that there was "absolutely no evidence" that Ms. Davison could work following July 26, 1996, and that as soon as Horseshoe had received recommendations on treatment and status changes from Dr. Boyd, Horseshoe had to deal with the demands. The administrative law judge stated:
You can't have the adjusters to continue to deny the claim when it's unclear. And basically the medical evidence was at best ambiguous. And when it's ambiguous, the law requires more than that. It requires you to investigate, go to a doctor, check it out, see how far we can go, what is suggested. And it requires that doctors of equal stature be doing that, and that just wasn't done here.

DISCUSSION
The first issue is whether or not the administrative law judge erred in concluding that Ms. Davison's disc problems were aggravated by the accident. Horseshoe argues Davison testified at trial that when she was first treated at Bossier Medical Center, she did not complain of back pain, but only right ankle, hip, and knee pain. Furthermore, Horseshoe argues that Dr. Acurio's medical records did not reveal Davison complained of any back pain until December 29,1995, twenty-seven days after the accident. Even though Dr. Boyd believed that her injuries were related to the fall, Horseshoe asserts that Dr. Acurio is an expert in orthopedics, while Dr. Boyd is not, and Horseshoe relies on jurisprudence holding that the testimony of a specialist in a certain field is entitled to greater weight than that provided by other medical experts when the subject at issue concerns the particular field of the specialist's expertise. See Johnson v. Depart. of Health and Human Res., 590 So.2d 854 (La. App. 3d Cir.1991).
An appellate court should not disturb the findings of an administrative law judge in a worker's compensation matter unless they are clearly wrong or manifestly erroneous. Nubles v. H & J Employment Service, 25,792 (La.App.2d Cir.5/4/94), 637 So.2d 648. It is the function of the trial court to assess the weight to be accorded both the lay and the medical testimony, and the court may accept or reject the opinion of a medical expert depending upon what impression the qualifications, credibility, and testimony of that expert make on the court. Owens v. Georgia Pacific Corp., 535 So.2d 990 (La.App. 2d Cir.1988). In this case, the administrative law judge heard the testimony of the plaintiff and reviewed the medical evidence, including the depositions of Dr. Acurio and Dr. Boyd. The judge was aware of and specifically noted the fact that Dr. Boyd was a general physician while Dr. Acurio was a specialist.
Considering the record before us, we cannot conclude that the judge committed manifest error in finding an aggravation of *788 Davison's degenerative disc problems. We note that Davison testified that she did complain of back pain at Bossier Medical Center, and that Dr. Boyd had stated in his deposition that while Ms. Davison had not shown any physical signs of back injury before the accident in December 1995, she had continuing problems with muscle spasms and pain following the accident. Dr. Boyd had seen Ms. Davison only two days after the accident and at that time had taken an x-ray of her cervical spine which revealed some straightening of the normal lordotic curvature, indicating musculoskeletal strain in that area. Moreover, we concur with the hearing officer's observation with regard to Dr. Acurio's deposition testimony to the extent that Dr. Acurio had indicated there was the possibility of an aggravation of a preexisting condition, and that Dr. Acurio's testimony was not particularly clear. A trial court is not bound to accept the testimony of an expert whose testimony is presumptively given more weight if the court finds the opinion less credible than that of other experts. Ponthier v. Vulcan Foundry, 95 1343 (La.App. 1 Cir. 2/23/96), 668 So.2d 1315.
The jurisprudential favoring of a specialist's testimony assumes that other factors are equal. That is not the case here. Dr. Boyd had treated Ms. Davison as her regular physician before the accident and continued to treat her continuously following the accident. Unlike Dr. Acurio, he was able to observe the degree of change in Ms. Davison's condition that occurred following the accident, and to follow her condition over a longer period of time. Furthermore, the administrative law judge, as trier of fact, certainly could make credibility determinations with respect to Ms. Davison's testimony, and conclude that Ms. Davison was being truthful when she related that she had back pain starting soon after the accident, even though Dr. Acurio's records did not indicate a complaint of back pain until several weeks later. Although the accident did not cause her disc problems which appear to have been degenerative in nature, even Dr. Acurio conceded that the accident could have aggravated those problems, and that the manifestation of such problems does not always occur immediately after an accident. However, because manifestation more often does occur soon after an accident, Dr. Acurio ultimately concluded in his deposition that Ms. Davison's low back problems more likely were coincidental. Dr. Acurio admitted that he had never examined Ms. Davison's neck, although the evidence indicated she had two cervical disc problems.
Just as a court is not bound to blindly give credence to the opinion of plaintiff's treating physicians, Jackson v. A.I.A., 94-371 (La.App. 5 Cir. 11/16/94), 646 So.2d 1088, neither is a court bound to blindly give greater weight to the opinion of a specialist over a general practitioner. For the reasons set forth above, we conclude that the administrative law judge did not commit manifest error in favor of Ms. Davison, but correctly found that Horseshoe could not continue to rely on the opinion of Dr. Acurio once Dr. Boyd had written his letter several months after the accident occurred. As previously noted, that letter stated it would be unreasonable for Ms. Davison to work at that time, and that Dr. Boyd was ordering an MRI to determine the cause of her continuing problems. Workers' Compensation handlers cannot rely on earlier optimistic medical reports when presented with subsequent medical information indicating disability. See Scott v. Town of Jonesville, 96-41 (La.App. 3d Cir.7/3/96), 676 So.2d 1196; Gibson v. Dynamic Industries, Inc., 96-1605 (La.App. 3d Cir.4/2/97), 692 So.2d 1320. The obligation of a workers' compensation insurer or employer to make reasonable efforts to ascertain an employee's medical condition before termination or denial of benefits is a continuing one, and, thus, if subsequent to an initial optimistic report an insurer receives medical information of disability, the insurer cannot blindly rely on an earlier report. Penn v. Wal-Mart Stores, Inc., 93-1262 (La. App. 3d Cir.6/15/94), 638 So.2d 1123.
Finally, with respect to the issue of the adequacy of the attorney fee award, we detect no error in the amount of the administrative law judge's award at the trial level, but we hereby amend that award to add an additional $1,500 for attorney fees expended on appeal.

*789 CONCLUSION
For the foregoing reasons, we hereby affirm the judgment below at appellant's costs, amending the award to add an additional $1,500 in attorney fees for work on this appeal.
AMENDED AND AFFIRMED.