| .WOODARD, Judge.
This is a workers’ compensation case. On January 17, 1995, Randy Wells injured his neck while driving his employer’s, Texas Industries, Inc. d/b/a Louisiana Industries (LI) of Alexandria, Louisiana, cement truck. On December 19, 1995, he filed a disputed claim for benefits. Following trial, .the workers’ compensation judge awarded temporary total disability (TTD) benefits from March 30, 1995 to May 2, 1995 and ordered payment of medical expenses. He denied Wells an award for penalties and attorney’s fees. Wells appeals. We modify and affirm.
FACTS
On January 17, 1995, Randy Wells injured his neck when the cement truck he was driving for LI struck an eight inch curb. The impact caused him to hit his head on the roof of the cab. Wells reported the accident to his supervisor and was instructed by his employer to see Dr. Homi Cooper of the Cabrini Center for Occupational | ¡Medicine in Alexandria, Louisiana. Dr. Cooper released Wells with restrictions that he was not to operate a vehicle or lift more than twenty pounds. Wells testified that when he called his supervisor, Randy Roshto, to inform him of Dr. Cooper’s restrictions, he was told to report to work the next day, so the company would not have any accident time loss. Wells’ mother drove him to work. Because of the pain medication prescribed by Dr. Cooper,, he spent the entire day asleep on a couch at the office. The LI supervisor, Kevin Williams, denied telling Wells to report to work, but did not deny that Wells had slept the entire day.
. On January 20, 1995, Wells returned to Dr. Cooper who diagnosed him with cervical and upper thoracic muscle spasms and tenderness and released him for light-duty w.ork. This meant he could operate a small pick-up truck,- but not a cement truck. He returned to work on January 23, 1995. LI had Wells run errands and deliver mail until January 25, 1995. On that day, Wells testified that he told Williams he was still experiencing pain and needed to go back to see Dr. Cooper. According to Wells, Williams replied not to worry about it and to go back to his work. On January 26, 1995, Wells returned to work prepared to nesume, his duties as a cement truck driver, as Dr. Cooper instructed, but before making any deliveries, he was terminated for unrelated safety violations.
Within a week or two of his termination, Wells called LI and received permission to see Dr. Cooper about the pain in his upper cervical muscles. At that visit, Dr. Cooper advised him to take Ibuprofen throughout the day, take hot showers, and wear a cervical collar. As he was without employment, Wells began looking for a job.
On March 30, 1995, Wells suffered a blackout while driving his personal vehicle on the way to pick up his. wife from work. He crashed into a utility pole. He was transported by ambulance to St. Francis Cabrini Hospital in Alexandria, Louisiana, where he was treated .for various injuries. *652 His family doctor thought Wells might have suffered the blackout due to a heart condition, as his family had a history of heart disease, but a cardiologist performed numerous tests and ruled out that possibility.
Among the injuries sustained in the accident, Wells had damaged the blood vessels behind his eyes and, as a result, suffered from poor vision for a month. There was concern that more vessels would burst. Therefore, Dr. James Ralston monitored |3him until May 2, 1995. The doctor prescribed glasses, but Wells never obtained them because he could not afford to do so.
Wells experienced several blackouts in the period between the accident on March 30, 1995 and April 20, 1995. On April 20, 1995, still experiencing neck problems, he sought treatment from Dr. Murrel Nelson, a chiropractic. Dr. Nelson diagnosed that Wells had a severely restricted neck with muscle spasms and the onset of myofibro-sitis. Wells testified that Dr. Nelson did not release him in June, rather he was forced to quit going to the doctor so he could return to work. By certified mail, return receipt requested, Dr. Nelson immediately sent the required documentation to LI, requesting approval to treat Wells beyond the standard pre-approved $750.00 limitation. LI received the documentation on April 24, 1995, but never responded to Dr. Nelson’s request. Nevertheless, Dr. Nelson continued to treat Wells on June 12, 1995. On October 13, 1995, on behalf of its insured, LI, AIG Claims Service responded to Dr. Nelson, denying treatment.
Wells filed a Disputed Claim for Compensation on or about December 19, 1995, in District 2, Office of Worker’s Compensation. LI answered on March 8, 1996. Additional pleadings were filed by thé parties. The matter was set for trial on January 23, 1997. Dr. Nelson had diagnosed a “military neck” which results in an abnormally straight neck. He testified that it is more probable than not that this condition, coupled with the muscle spasms Wells had experienced since the accident, prevented blood from flowing to the head and resulted in the temporary blackouts. This testimony was uncontradicted. The workers’ compensation judge recessed the trial soon after starting, so all available medical information could be submitted to the State of Louisiana Office of Workers’ Compensation Utilization Review process, where an independent medical examiner would be appointed to review the conflicting medical opinions. LI requested this review.
On May 15, 1997, Mr. Ronald Menville, Assistant Secretary of the Louisiana Department of Labor, Office of Worker’s Compensation Administration, issued an opinion stating: “It is the reviewer’s opinion, that the accident of March 30, 1995 is probably causally related to the accident of January 17, 1995 assuming the veracity and completeness of the information presented.” Menville rejected the findings of Dr. Cooper who blamed the blackouts on a probable cardiovascular condition. Men-ville noted that Dr. Cooper was completely ignoring the facts that Wells had under-gone14extensive cardiovascular examination in September of 1994, which ruled out any heart problems, and that advanced cardiovascular disease could not have developed between September of 1994 and March of 1995.
After a trial on April 7, 1997, the workers’ compensation judge awarded TTD benefits from March 30, 1995, through May 2, 1995, as well as medical expenses, plus judicial interest, and costs of court. The workers’ compensation judge signed the judgment on October 1, 1997. Wells filed a devolutive appeal on December 1, 1997.
ASSIGNMENTS OF ERROR
Wells alleges that the workers’ compensation judge erred in:
1. Holding that he was entitled to temporary total disability benefits only through May 2,1995.
*653 2. Failing to award him statutory penalties on all indemnity and medical benefits that were not timely paid by appellee.
3. Holding that the claim for payment of statutory attorney’s fees should be denied.
LAW
Temporary Total Disability Benefits
The workers’ compensation judge awarded Wells TTD benefits from March 30, 1995, through May 2, 1995. Although the blood vessels behind his eyes, which were creating Wells’ vision problems, no longer needed to be monitored after May 2, 1995, Wells was still under the care of Dr. Nelson until June 12, 1995. La.R.S. 23:1221(l)(a) states, in part, that benefits are to be paid, “[f]or any injury producing temporary total disability of an employee to engage in any ... occupation for wages.”
In Scott v. Town of Jonesville, 96-41, p. 4 (La.App. 3 Cir. 7/3/96); 676 So.2d 1196, 1198, we stated, “ [t]he Louisiana Supreme Court in Bruno v. Harbert International, Inc., 593 So.2d 357 (La.1992) stated that the hearing officer’s determination on credibility and whether a worker has discharged his burden of proof are not to be disturbed on review unless clearly wrong or where manifest error is shown.”
[¡/The question we have before us is whether or not the trial court’s decision to terminate TTD benefits on May 2, 1995 was manifestly erroneous. The record establishes that this portion of the workers’ compensation .judge’s decision was manifestly erroneous.
On April 20, 1995, Wells began treatment with Dr. Nelson and remained under his care until June 12, 1995. The testimony concerning Wells’ inability to return to gainful employment was uncontradicted. Dr. Nelson testified that Wells was not able to perform his job during the time he treated him. Accordingly, the award of TTD benefits is extended to include the period of May 2, 1995 through June 12, 1995. LI shall be responsible for Dr. Nelson’s medical expenses.
Penalties and Attorney Fees
As the second and third assignments of error are related, we will address them simultaneously. The trial court- failed to award Wells penalties for nonpayment of compensation benefits and attorney’s fees. Wells contends that this was error, however, we find no manifest error in the workers’ compensation judge’s decision and we affirm.[1]
CONCLUSION
For the above reasons, the judgment of the Office of Workers’ Compensation is modified. It is adjudged that: (1) LI is ordered to pay TTD benefits for the period March 30, 1995, through June 12, 1995, and Dr. Nelson’s medical expenses; (2) all costs of this appeal are to be borne by LI. The decision of the workers’ compensation judge is affirmed in all other respects.
AFFIRMED AS MODIFIED.
WOODARD, J., dissents in part and assigns written reasons.

. Judge Woodard dissents, with reasons, from this part of the opinion.