I, WOODARD, Judge.
Plaintiff, Livonia Lemoine (Lemoine), appeals a decision of the workers’ compensation judge approving the termination of her benefits. She had filed a claim for workers’ compensation benefits, seeking to change the classification of her benefit status from Supplemental Earnings Benefits (SEB) to Temporary Total Disability (TTD). Approximately two and a half months before trial, defendant, Harris Management Company d/b/a Hessmer Nursing Home (Harris), tendered an offer to Lemoine of a job as a “laundry assistant.” Lemoine declined it. Harris terminated her compensation benefits.
On October 16,1996, trial was held limited to the issues of whether or not Lemoine was entitled to be classified as TTD and whether or not Harris’ termination of benefits was justified on the basis of her refusal of the job it had offered her. The workers’ compensation judge ruled for Harris on both issues. Lemoine devolutively appeals that decision. We reverse.
J2FACTS
During the course and scope of her employment with Harris, Lemoine injured her back in May 1990 and underwent her first surgery in November 1990. She filed her initial claim for benefits on March 7, 1992. In her first trial, which was on November 3, 1993, Lemoine established that a series of doctors, including orthopedists and neurosurgeons, had treated her for a lengthy period and that she was scheduled for surgery to fuse certain vertebrae in her back on November 18, 1993. The workers’ compensation judge ruled that Lemoine was entitled to SEB from the date of termination of benefits, March 7, 1992, until the surgery on Novem *954 ber 18, 1993, and, thereafter, TTD benefits based on the surgery after the trial. On appeal, this court, in Lemoine v. Hessmer Nursing Home, 94-836 (La.App. 3 Cir. 3/1/95); 651 So.2d 444, awarded only SEB for an indefinite period, beginning March 7, 1992, but also held that Lemoine was entitled to another hearing to determine whether she was entitled to TTD benefits after surgery.
She filed a petition requesting such a hearing on May 26, 1995. Following her triple fusion of her lumbar vertebrae, she remained under the care of Dr. Thomas S. Whitecloud, III, at Tulane University Hospital and Clinic, who had treated her extensively prior to her fusion surgery in November 1993 and had performed her fusion surgery.
Harris arranged for Dr. Randall D. Lea of Baton Rouge, Louisiana to evaluate her on March 7, 1996. He concluded that she should be able to work at least six hours per day, five days per week, at a sedentary job.
Notwithstanding, her treating physician, Dr. Whitecloud, approximately one month later on April 15, 1996, made an entry on her chart, in part, that “she is temporarily totally disabled.” This was the last time he saw her since it was his last entry.
Lemoine had not worked at all since her injury in 1990. Yet, shortly before trial on the present claim, Harris created a job for and formally offered it to her on August 2, 1996.
The job description states:
JgHESSMER NURSING HOME, INC.
JOB DESCRIPTION — LAUNDRY ASSISTANT
The following described position of laundry assistant is offered to Ms. Livonia Lemoine by her former employer, Hessmer Nursing Home.
Position: Laundry assistant.
Hours: Five hours per day, five days per week (Hours may be increased if employee requests same.)
Rate of Pay: $4.25 per hour
Job duties: Primary job duties include folding clothes. Secondary duties involve assisting other laundry workers in laundry duties such as transferring clothes between washer and dryer and delivering clothes to residents rooms.
Sitting, standing, walking requirements: Employee may stand, sit or walk as she deems necessary while folding and sorting clothes. Minimal walking is needed when employee is engaged in delivering clothes to residents’ rooms.
Lifting requirements: Employee will handle only clothes and clothes may be lifted individually or in bulk in accordance with employee’s preference and abilities. Employee would not be required (sic) anything over 10 pounds.
TO BE COMPLETED BY PHYSICIAN
Livonia Lemoine is capable of performing the duties of laundry assistant for Hessmer Nursing Home, Inc. As described above.
(YES) (NO)
If no, please answer.
Livonia Lemoine is capable of performing the job of laundry assistant at Hessmer Nursing Home, Inc. with the following modifications:
[[Image here]]
LThis job description was submitted to Drs. Lea and John T. Weiss. Dr. Weiss, of Alexandria, Louisiana, was Lemoine’s physician of choice. He had treated her conservatively before and after his referral to Dr. Whitecloud. Dr. Lea checked the form “yes.” Dr. Weiss checked the form “yes” but added the word “trial.” Two days before the trial, on October 16, 1996, from which this appeal has been taken, Harris also obtained Dr. Whiteeloud’s signature on the form. He checked “yes.” None of the three physicians recommended any modification to the laundry assistant position job description for her. Lemoine refused to try the offered position because of her concern of causing serious further damage to her back.
On October 1, 1996, Harris filed with the Office of Workers’ Compensation a Notice of Suspension of benefits and terminated Lem- *955 oine’s compensation. Trial was held on October 16, 1996. The Harris Nursing Home Administrator testified that Harris would work with Lemoine to accommodate her disability.
The workers’ compensation judge ruled that Lemoine had failed to meet her burden of proof that she was TTD and that current law required her to attempt to do the offered job, in which she could earn her pre-injury wages. This, she had not done. He upheld Harris’ termination of her benefits and found Lemoine not to be entitled to either SEB or TTD benefits. She appeals this decision to this court.
ASSIGNMENTS OF ERROR
Lemoine claims that the workers’ compensation judge erred in:
1. Denying the claimant’s objections in her Motion in Limine, and her trial objections to the admission into evidence of the “evaluation” prepared by Dr. Lea as well as Dr. Lea’s check-off of “yes” on the job description submitted by the employer.
2. Admitting into' evidence Dr. Whitec-loud’s form checking off “yes” on the defendant’s job description, and in so doing erred in ruling that the Workers’ compensation judge Rules do not require a “medical record” to be certified and that “the key thing is the surprise element.”
3. Failing to recognize that the job description form submitted to Drs. Lea, Whiteeloud, and Weiss did not fairly describe the duties of the job, as is clearly seen by reference to the trial testimony.
4. Failing to find Ms. Lemoine temporarily totally disabled and in upholding the termination of her workers’ compensation benefits.
| r,5. Ruling that “if the Third Circuit found that she’s SEB prior to surgery and finding that the surgery has in fact at least stabilized her, then there’s no reason not to find her SEB right now.”
6. Failing to recognize as a “sham” rehabilitation the actions of the employer in creating a job for Ms. Lemoine and terminating her benefits.
7. Not awarding penalties and attorney fees in the trial court and in this appeal. ■
LAW
Motion in Limine
In a Motion in Limine prior to and at trial, Lemoine objected to the admissibility of Dr. Lea’s report as well as the subsequently obtained job description form with the notation “yes” checked off by him. The workers’ compensation judge overruled these objections and admitted the report into evidence as a Harris exhibit.
Lemoine argues that because of the expense of taking Dr. Lea’s deposition, which she did not do, that Dr. Lea’s report, which was otherwise certified, should not be admissible. She also urges that Dr. Lea was not her “health care provider,” therefore, he did not meet the statutory definition in La.R.S. 23:1021(11), permitting him to express a medical opinion about her condition. Thus, Dr. Lea’s reports and opinion were inadmissible hearsay.
Neither of these arguments has merit. She made a voluntary choice not to depose Dr. Lea because of the expense involved. Her choice does not render Dr. Lea’s opinion inadmissible. Further, La.R.S. 23:1021(11) provides:
“Health care provider” means a hospital, a person, corporation, facility, or institution licensed by the state to provide health care or professional services as a physician, hospital, dentist, registered or licensed practical nurse, pharmacist, optometrist, podiatrist, chiropractor, physical therapist, psychologist, board-certified social worker, or psychiatrist, and any officer, employee, or agent thereby acting in the course and scope of his employment.
Dr. Lea is a licensed physician who provides health care in this state. He obviously meets the statutory definition of being a “health care provider.”
|6The admission of Dr. Lea’s report and opinion is specifically permitted by the *956 Hearing Officer’s Rules, Section 2143, titled Medical Evidence and Affidavits. It states:
Expert medical or rehabilitation testimony-may be admitted by:
(1) reports of any health care provider certified as a true copy in accordance with the Louisiana Revised Statutes 13:3715.1;
(2) Deposition; (3) Oral examination in open court proceedings; however, no more than two physicians may present testimony for either party except by order of the Workers’ Compensation Judge; or (4) Any other manner provided by law.
The Office, taking into consideration that it is costly and time consuming to have physicians appear at the time of hearing for the purpose of giving live testimony, encourages the production of medical evidence by report or deposition.
(Emphasis added).
All of Dr. Lea’s records were certified and constituted medical evidence within the intent of the Workers’ Compensation Act. Lemoine’s Motion in Limine and objection to Dr. Lea’s opinions were properly overruled.
This assignment of error is without merit.
The Job Description Form
There are serious problems with the admission of, and reliance on, the job description form signed by the three doctors and admitted into evidence. The primary problem with its admission is that, in so doing, Harris violated Hearing Officer Rule 2143. Harris did not send the document to Lemoine until two days before trial. The rule mandates ten. This is to afford an opposing party adequate time within which to object. See Brooks v. Leggett & Platt, Inc., 94-0617 (La.App. 1 Cir. 11/9/95); 665 So.2d 432. Also, this rule is obviously an important safeguard for ensuring that the opposing side has a reasonable time within which to prepare a defense. Lemoine was afforded neither. This violation, alone, renders the document inadmissible in a workers’ compensation proceeding. Lemoine, 651 So.2d 444; Ramsey v. Cash & Carry Foods, Inc., 95-544 (La.App. 3 Cir. 11/2/95); 664 So.2d 511; See e.g. Schmitt v. City of New Orleans, 632 So.2d 367 (La.App. 4 Cir.1993). Accordingly, its admission is legal error.
Notwithstanding, even if the document were to be found to have been properly admitted, it should not have been relied upon by the workers’ compensation judge in his ruling as, because of its inaccuracy, it was not competent evidence, as we explain below. La.R.S. 23:1317(A). Yet, it, obviously, profoundly did influence the judge’s ruling, and as such, also constitutes reversible legal error.
The Job Description
When there is a reversible error of law, the court of appeal is required to redetermine the facts de novo from the entire record and render judgment on the merits. Gonzales v. Xerox Corp., 320 So.2d 163 (La. 1975); Wooley v. E.J.D. Builders, Inc., 94-955 (La.App. 5 Cir. 1/30/96); 668 So.2d 1221, writ denied, 96-506 (La.4/8/96); 671 So.2d 338; Augustus v. St. Mary Parish School Bd., 95-2498 (La.App. 1 Cir. 6/28/96); 676 So.2d 1144. Consistent with this mandate, we now turn to our examination of the Harris job description concerning whether it accurately portrays the job which it tendered to Lemoine and represented to the physicians.
Lemoine contends that it did not accurately reflect the laundry assistant position which she would actually be required to perform. This form describes her primary duty to be folding clothes and her secondary duty to be “transferring clothes between washer and dryer and delivering clothes to residents’ rooms.” While the job description appears to be within Lemoine’s physical limitations, the evidence adduced at the hearing proved otherwise.
The most prominent testimony, regarding an important inaccuracy on the form, came from Mr. Miller, the Harris nursing home administrator, who admitted on cross examination that the job would involve a “fair amount of bending.” He explained that the nursing home had two types of washers, the top load type and the large commercial washer of at least fifty pound capacity and above waist level, and that the cart used to deliver the clothing extends from the floor to head high, with shelves. Obviously, Lemoine would have to bend over, repeatedly, to place *957 the clothing on, and retrieve it from, the lower shelves of the cart.
IgWhile consistent with Mr. Miller’s description, Lemoine provided a more detailed account of the job, having performed it in the past. She testified that some of the washing machines hold between fifteen and twenty-five pounds of clothes, which would be much heavier when wet and would include sheets, blankets, and quilts. In order to load the washing machines, she would have to stoop and bend over when lifting and transferring the wet garments from the washer to the dryer. She would have to place the clothing in barrels, whose tops are about chest high on her. She would then have to bend over to retrieve the wash in the bottom of the barrels, which, for her, would be a virtual impossibility. Further, to deliver the washed and folded linens to the rooms, first, she would have to put them on the shelves of the cart, bending, and reaching from her head to the middle of her shins. Then, she would have to remove them from the shelves in the same manner and bring them into the rooms. Clothing on hangers would be on a rack that she would have to push down the halls to deliver, which she also believed she could not do.
Her testimony and that of Dr. Weiss established that she could not perform most of these duties. Harris argues that she could work at her own pace, but it is not realistic to think that Lemoine, given her physical limitations, could actually perform the activities required for washing, drying, folding, and delivering clothing, even one or two items at the time. Dealing with wet blankets, sheets, and quilts, one at a time, presents an unwieldy challenge even for the uninjured. And, at the very least, the “one item at a time” proposal can only exasperate Lemoine’s problem, as her number of times to bend would be greatly increased. The record shows that she was so restricted in her ability to bend that she could only make up her bed at home by getting on her knees in order to avoid bending over.
Bending, an important job activity, was not disclosed on the form to Drs. Whitecloud and Weiss as being part of the job which they believed they were approving, nor is there evidence in the record that they were otherwise advised. It is doubtful that Drs. Whi-tecloud and Weiss would have approved this job had they known of this requirement, given the fact that Dr. Whitecloud found her to be temporarily totally disabled and Dr. Weiss’ testimony was that “I don’t really believe she could do anything that would require any — essentially any bending at all.” (Emphasis added.)
| ¡)The discrepancies between the job offered to Lemoine, as described on the form, and the realities of the job’s requirements are glaring. As such, the doctors’ opinions, expressed by their signatures, are meaningless and, therefore, deserve no weight.
Accordingly, even under a manifest error standard of review, we would find that the workers’ compensation judge’s finding that Lemoine could perform the job of laundry assistant was clearly wrong.
TTD and Termination of Benefits
In this assignment of error, Lemoine contends that the workers’ compensation judge’s finding that she was not TTD was manifestly erroneous. She also contends that Harris should not have terminated her SEB. By reason of the reversible legal error, we have found in these proceedings, we are not bound by the manifest error rule. We will decide this issue based upon our de novo review of the record.
Since Lemoine sought to change her status from SEB to TTD, she was required to meet the burden of proof required by La.R.S. 23:1221(l)(c). It states:
For the purposes of Subparagraph (l)(a) of this Paragraph whenever the employee is not engaged in any employment or self-employment as described in Subparagraph (l)(b) of this Paragraph, compensation for temporary total disability shall be awarded only if the employee proves by clear and convincing evidence, unaided by any presumption of disability, that the employee is physically unable to engage in any employment or self-employment, regardless of the nature or character of the employment or self-employment, including but not limited to any and all odd-lot employment, sheltered employment, or employment *958 while working in any pain, notwithstanding the location or availability of any such employment or self-employment.
(Emphasis added).
Lemoine relies on a statement appearing in Dr. Whitecloud’s medical report of April 15, 1996, which states “she is temporarily totally disabled,” and her testimony describing her physical limitations. The entire report states:
Ms. Ducote (sic) returns today. She has been doing about the same. She has not worked now since 1990. She once was employed as a nurse’s aid. X-rays show alignment of the spine remains the same and there is possibly a pseudarthrosis at L4-5 but I do not think any surgery 110is indicated because her symptom complex is not that bad. She has a thirty percent permanent physical impairment retaining of her entire body because of her three level degenerative disc disease requiring fusion and she is one hundred percent unable to return to her former work activities. She is temporarily totally disabled.
(Emphasis added).
As her treating physician, Dr. Whi-tecloud’s opinion is to be afforded more weight than that of a physician examining the claimant for trial purposes, here Dr. Lea. Simon v. Winn-Dixie Louisiana, Inc., 95-1635 (La.App. 3 Cir. 8/7/96); 678 So.2d 85, writ granted, 96-2223 (La.11/22/96); 683 So.2d 296; Cormier v. Resthaven Nursing Home, 95-230 (La.App. 3 Cir. 1/17/96); 670 So.2d 233. We also note that Dr. Whitec-loud’s opinion is more recent than Dr. Lea’s, who examined her one time for Harris without having the benefit of Dr. Whitecloud’s or Dr. Weiss’ records of her condition.
As in every claim for TTD, we have examined the totality of the evidence, both medical and lay. Leonard v. Wal-Mart Stores, Inc., 582 So.2d 332 (La.App. 5 Cir.1991). Lemoine argues in her brief that “it can be readily seen that the overwhelming evidence in this case is that Mrs. Lemoine cannot perform the job created for her, and that she is temporarily totally disabled.” We must agree. Given the inadmissibility of the job description forms, the requirement that treating physician’s opinions deserve more weight, and the last assertion of her treating physician being that she is “temporarily totally disabled,” we find that she has met her burden of proving she is temporarily totally disabled. She is entitled to TTD benefits from September 19, 1996, the date of the wrongful termination of her SEB by Harris.
SEB
In her fourth assignment, Lemoine contends that the workers’ compensation judge erred in ruling “if the Third Circuit found that she’s SEB prior to surgery and finding that the surgery has in fact at least stabilized her, then there’s no reason not to find her SEB right now.”
In view of our decision above that Lemoine was TTD from November 18, 1993 until the present, this issue is moot.
| uRehabilitation
In this assignment of error, Lemoine contends that Harris’ efforts to provide her a job that Harris inaccurately described as being within the medical limitations of her disabilities was a “sham” rehabilitation effort.
La.R.S. 23:1226(B)(1) states, in part:
The goal of rehabilitation services is to return a disabled worker to work, with a minimum of retraining, as soon as possible after the injury occurs. The first appropriate option among the following must be chosen for the worker:
(a) Return to the same position.
(b) Return to a modified position.
(c) Return to a related occupation suited to the claimant’s education and marketable skills.
The import of this issue will be served through the determination below.
Penalties and Attorney’s Fees
Lemoine contends in this assignment of error that the workers’ compensation judge erred in failing to award penalties and attorney’s fees and requests them in this appeal.
Pursuant to La.R.S. 23:1201 and 23:1201.2, an insurer who arbitrarily and capriciously fails to pay compensation claims may' be liable for penalties and attorney’s *959 fees. When the evidence establishes that the employer relied upon credible information when it reduced plaintiff’s benefits, the claimant is not entitled to penalties and attorney’s fees. See Lewis v. Malone & Hyde, Inc., 626 So.2d 531 (La.App. 3 Cir.1993); see e.g. Watkins v. Asphalt Associates, Inc., 96-249 (La. App. 3 Cir. 12/4/96); 685 So.2d 393.
An employer can be arbitrary and capricious if it fails to “make a reasonable effort to ascertain an employee’s exact medical condition before benefits are terminated.” Johnson v. Ins. Co. of N. Am., 454 So.2d 1113, 1117 (La.1984). And, if an insurer terminates benefits based on the findings of an optimistic report and later receives information indicating a continuing disability, the insurer “may not blindly | i¿rely upon the earlier report to avoid penalties for arbitrary nonpayment of compensation benefits.” Id. An employer has a duty to properly and thoroughly investigate the employee’s medical condition and capabilities before terminating benefits. See Lucius v. H.B. Zachry Co., 95-1667 (La.App. 3 Cir. 5/8/96); 673 So.2d 1357, writ denied, 96-1483 (La.9/20/96); 679 So.2d 438.
Thus, we must examine what credible information Harris had to support its termination of benefits and whether it made a reasonable effort to ascertain her exact condition.
On September 19, 1996, when Harris terminated Lemoine’s SEB, it had in its possession Dr. Lea’s report and the proposed in accurate job description for Lemoine, upon which it had obtained the approval of two doctors — its own, Dr. Lea, who had examined her but once, and Dr. Weiss. As of August 7, 1996, it had Dr. Whitecloud’s records in which he had stated, approximately one month after Dr. Lea said she could return to work, that she was temporarily totally disabled. It did not have Dr. Whitecloud’s approval of the proposed job description.
We submit that terminating Lemoine’s benefits without further and complete investigation of the medical information, which was most relevant to her condition, was unreasonable and capricious, deserving of penalties and attorney’s fees. Specifically, Harris had presented Dr. Weiss with an inaccurate description of its proposed job. Thus, in effect, it had obtained no valid approval from him at all. Next, the last physician to see Lemoine would have had the most current information and, given that he was her treating physician, Dr. Whitecloud, one would think it most beneficial and prudent to obtain his fully informed opinion as to her condition and complete capabilities before terminating benefits, if indeed one’s interest was to return the employee to a job she is truly capable of performing, if any at all.
Inherent within this duty to properly investigate is the responsibility to provide the physician with accurate and comprehensive job related information upon which the doctor can fairly judge whether indeed the employee can so perform. Thus, an employer who submits an inaccurate job description, having omitted an integrally important activity, to a doctor for approval and then terminates benefits based on that doctor’s opinion that the employee is capable of performing the offered position has acted, at the very least, arbitrarily and capriciously. Accordingly, we award a penalty |]3of 12% of the past due temporary total disability benefits and $7,500.00 in attorney fees.
CONCLUSION
The decision of the workers’ compensation judge is reversed. The workers’ compensation judge’s determinations that Lemoine had not proved, by clear and convincing evidence, that she was entitled to TTD and that Harris had not wrongfully terminated her SEB after she refused employment in a position that accommodated her disability were erroneous. Lemoine is entitled to TTD compensation from September 19, 1996, the date of the termination of her SEB by Harris. She is awarded 12% in penalties on the unpaid TTD benefits and attorney’s fees in the amount of $7,500.00. All costs are charged to Harris.
REVERSED AND RENDERED.