781 So.2d 760 (2001)
Leonard B. JOHNSON
v.
T.K. STANLEY, INC.
No. 00-1000-WCA.
Court of Appeal of Louisiana, Third Circuit.
February 28, 2001.
Rehearing Denied March 28, 2001.
*761 William Lee Schuette, Jr., Jones, Walker, Waechter, Baton Rouge, LA, Counsel for T.K. Stanley, Inc.
Alfred Veazie Pavy Boudreaux, Pavy & Boudreaux, Opelousas, LA, Counsel for Leonard B. Johnson.
Court composed of COOKS, SAUNDERS, and WOODARD, Judges.
WOODARD, Judge.
This workers' compensation litigation arose from an accident which Mr. Leonard B. Johnson sustained while in the course and scope of his employment with T.K. Stanley, Inc. (TK), on July 9, 1997 (the 1997 accident). The workers' compensation judge (WCJ) ordered that TK pay for the cost of a surgery and awarded Mr. Johnson Total Temporary Disability benefits (TTDs) and attorney's fees. The main issue raised by this litigation is whether the 1997 accident caused Mr. Johnson's injury. We find that the medical evidence in the record supported the WCJ's decision.
However, this litigation also raised the issue of whether Mr. Johnson was entitled to TTDs. An employee is entitled to TTDs upon proving, by clear and convincing evidence, physical inability to engage in any *762 employment. Although we find the WCJ's decision to be supported by medical evidence, we also find that Mr. Johnson resumed work with TK for a period of time, which we cannot determine with precision from the record. We also find the record to be unclear regarding the extent of Mr. Johnson's work and wages during this period of time. Accordingly, we remand the case to the WCJ to have him consider this issue. We affirm in part, reverse in part, and remand.

* * * *
On July 9, 1997, Mr. Leonard B. Johnson, experienced an accident while in the course and scope of his employment as a swamper with TK. This specific event formed the basis of Mr. Johnson's current claim, yet, this was only one of countless accidents which he had suffered throughout his professional career. Indeed, the record reveals, that he was involved in a car accident in 1985, a crewboat accident in 1986, and a truck fall accident 1991. More recently, in April of 1995, he was injured while in the course and scope of his employment with TK when attempting to unload a truck. Finally and unfortunately for Mr. Johnson, he endured another car accident in July of 1998. Mr. Johnson's medical history is well documented. Specifically, following the 1995 accident, Mr. Johnson complained, inter alia, of lower back pain, radiating, mainly, down to the back of his right. Mr. Johnson originally consulted with Dr. Michael Lee, a licensed chiropractor, who referred him to Dr. John E. Cobb, an orthopedic surgeon. Dr. Cobb interpreted the lumbar x-rays then conducted to show a "moderate degree of adaptive changes at the facet joints[.]" Litigation ensued between TK and Mr. Johnson while he still worked for TK in a light duty capacity. The parties, however, settled this first suit on June 28, 1999.
The circumstances, surrounding the 1997 accident, arose on July 9, 1997, when Mr. Johnson tried to help Mr. Harry Hollier, a truck driver for TK, move a Grey Wolf 509 drilling rig in Kaplan, Louisiana. He stood on a trailer, picked up a block, and stepped on a board which had not been bolted to the trailer's floor. One of the boards' sides raised in a "see saw effect." Mr. Johnson fell through a hole, which the board covered, straddling an Ibeam and hitting his groin area on his way down. Mr. Hollier witnessed the accident. He helped Mr. Johnson back into a sitting position in which he remained for approximately ten minutes. Then, he rose back up and went back to work. He advised TK's night dispatcher regarding the accident and his injuries at approximately 10 p.m. that evening. Mr. George A. Cook, TK's manager, was made aware of Mr. Johnson's accident the following morning.
In the accident report which Mr. Johnson filed, he described the nature and extent of his injury as "[b]ack and abdominal, groin pain!!" He visited Dr. Lee to whom he related groin pain, as well as pain in his legs and lumbosacral spine. He told Dr. Lee that he felt something snap in his back when he fell. Dr. Lee found Mr. Johnson's genitals to be swollen and, among other symptoms, noted that his "[l]umbosacriac spine is tightly spasmed and exquisitely tender over the left L4-L5 sacroiliac area." Dr. Lee referred him to Dr. Cobb.
Dr. Cobb had last seen Mr. Johnson in 1996, when he had him undergo a CAT scan and a myelogram, which he found unremarkable. At that time, he did not see any evidence of a disc bulge, herniation, or protrusion. Dr. Cobb noted Mr. Johnson's lower back and left leg complaints and placed him off of work from August 20, 1997. Nevertheless, apparently, Mr. Johnson returned to work just a *763 few weeks after the 1997 accident, and resumed his alleged light duty occupation with TK until some time in 1998. Dr. Cobb ordered a CT scan and myelogram, which Mr. Johnson underwent on May 18, 1998. In Dr. Cobb's opinion, the imaging study revealed the existence of a bulging disc at L5-S1. Dr. Cobb did not prescribe a specific treatment but recommended that Mr. Johnson undergo surgery.
After the 1997 accident, TK paid Mr. Johnson compensation benefits from July 9, 1997 to September 16, 1997, as well as some medical expenses. It stipulated to the fact that he had acted in the course and scope of his employment. However, it denied Dr. Cobb's recommendation that Mr. Johnson undergo surgery, as well as an imaging study, and considered that Mr. Johnson's alleged back injury was not related to the 1997 accident, but rather, to the 1995 or 1998 accidents.
Mr. Johnson filed suit on June 25, 1998, alleging that he sustained injuries as a result of the July 1997 accident. The workers' compensation judge heard the case, on November 9, 1999, and ordered that TK pay for Dr. Cobb's recommended surgery and testing. He also ordered TK to pay Mr. Johnson indemnity benefits from September 16, 1997, until he would reach maximum medical improvement after undergoing surgery. Finally, he awarded Mr. Johnson $3,500.00 in attorney's fees, although he found TK not to have been arbitrary and capricious in handling Mr. Johnson's claim. TK appeals, suspensively.

* * * * *

DISABILITY/CAUSATION
We must determine whether the evidence in the record reasonably supports the WCJ's finding that the 1997 accident caused Mr. Johnson's alleged disability. In a workers' compensation case, an injured employee has the burden of proving, by a preponderance of the evidence, that his employment accident caused the alleged disability.[1] Upon finding that Mr. Johnson had met his burden of proof, the WCJ stated the following:
Based on the testimony of Mr. Johnson and Harry Hollier, along with the accident report filed out at the time of accident [sic], it is clear that Mr. Johnson suffered an on the job accident on July 9, 1997. The real issue is the extent of Mr. Johnson's disability. Dr. Cobb, Mr. Johnson's treating physician, testified that he found a left sided disc herniation at the L4-5 level, causing left sided leg and low back pain. Dr. Cobb further stated that the CT scan taken of Mr. Johnson's low back, on or about January of 1996, indicated no herniation, degenerative changes or other abnormalities at the L4-5 level. Therefore, there can be no question that the July 1997, accident caused the left lumbar disc herniation[.]
TK does not seriously rebut the fact that Mr. Johnson experienced an accident on July 9, 1997. However, the issue, which TK raises on appeal, is whether Mr. Johnson suffered a disabling injury, and if so, whether the 1997 accident caused his injury.

Disabling Injury
The issue is whether the record reasonably supports the WCJ's finding that Mr. Johnson suffered a disabling injury. The record reflects that after the 1997 accident, Mr. Johnson consulted with Dr. Lee, who after a physical examination, stated that his "[l]umbosacriac spine [was] tightly spasmed and exquisitely tender over the left L4 L5 sacroiliac area," apparently *764 explaining the left leg pain. Dr. Lee referred Mr. Johnson to Dr. Cobb, who placed him off of work starting August 20, 1997. Dr. Cobb agrees with the radiologist report that the May 18, 1998 imaging studies revealed a disc herniation at the L4-5 level. In fact, he recommended that Mr. Johnson undergo surgery and opined that he would reach maximum medical improvement within approximately a year of it. In his September 10, 1999 deposition, Dr. Cobb stated that he could not recall ever releasing Mr. Johnson for work and thought that he was unable to resume work pending treatment after August 20, 1997. Additionally, when asked whether he thought Mr. Johnson was able to return to work after the date of his last examination on June 3, 1998, he stated:
I think if he was making an attempt to return, it would have been something pretty light with a lot of flexibility. He can't sit very long, and I don't think he can do hardly any lifting. He was taking more medication too, so it probably wouldn't be a good idea for him to try to return to work.
Dr. Frederic L. Mayer, another orthopedic surgeon, examined Mr. Johnson as an independent medical evaluation (IME) related to the 1997 accident. He stated that he did not agree with Dr. Cobb's finding of a disc herniation. Accordingly, upon reaching her decision, the WCJ could have chosen between two permissible views of the evidence. In this case, he followed the opinion of Mr. Johnson's treating orthopedic surgeon, rather than Dr. Mayer's, who had a limited intervention in the case. Hence, we find no manifest error in the WCJ's decision.

Causation
The next issue is whether the WCJ erred when he found Mr. Johnson's disability to be related to the 1997 accident. Again, although Dr. Mayer could not see any different injury from that of Mr. Johnson's 1995 accident, Dr. Lee and Dr. Cobb differed. First, Dr. Lee stated that the 1995 and 1997 injuries were similar in that they both involved the lumbosacral and disc area, however, they did not present the same manifestation and symptomology. In fact, he explained that the shift from right leg pain, which Mr. Johnson suffered after the 1995 accident, to the left leg indicated a similar type of injury, although different in that it related to left disc compression rather than to right disc compression.
Furthermore, Dr. Cobb's imaging interpretation that Mr. Johnson suffered a left paracentral disc herniation corroborated Dr. Lee's findings. Dr. Cobb stated that he related such impressions to the 1997 accident. Finally, where his imaging study interpretation did not reveal any positive findings after the 1995 accident, his 1998 disc herniation impressions predated Mr. Johnson's 1998 accident, thus eliminating the possibility that the 1998 accident could have caused his present condition.
Accordingly, we find that Mr. Johnson proved, by a preponderance of the evidence, that he suffered an injury which was caused by an accident he suffered while in the course and scope of his employment. We affirm this part of the WCJ's decision.

MEDICAL BENEFITS
We must determine whether TK improperly denied Mr. Johnson's claim to medical benefits.
TK finds error in the WCJ's decision regarding Dr. Cobb's recommended surgery, arguing that Mr. Johnson did not allege its refusal to pay for surgery in his pleadings. However, in a workers' compensation claim, the pleadings may be enlarged by the record when evidence pertaining *765 to the specific claim has been introduced without objection by the adverse party.[2] To this effect, La.Code Crim.P. art. 1154 provides:
When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised by the pleading. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment; but failure to so amend does not affect the result of the trial of these issues. If evidence is objected to at the trial on the ground that it is not within the issues made by the pleadings, the court may allow the pleadings to be amended and shall do so freely when the presentation of the merits of the action will be subserved thereby, and the objecting party fails to satisfy the court that the admission of such evidence would prejudice him in maintaining his action or defense on the merits. The court may grant a continuance to enable the objecting party to meet such evidence.
In the instant case, our review of the record reveals that Mr. Johnson introduced evidence regarding TK's denial of the Dr. Cobb's recommended surgery. Indeed, Dr. Cobbs' records and deposition reflect TK's denial and were introduced into the record without objection. Accordingly, we find no merit in TK's assertion.
Regarding the substance of the claim for denial of medical benefits, it is well settled that an employer has the duty to furnish all necessary medical expenses and treatment to an injured employee.[3] Specifically, our workers' compensation scheme provides that "the employer shall furnish all necessary drugs, supplies, hospital care and services, medical and surgical treatment ... and shall utilize such state, federal, public or private facilities as will provide the injured employee with such necessary services."[4] The employee also has the right to his choice of a treating physician.[5] Additionally, that physician may seek whatever consultations are medically necessary to determine the employee's course of treatment.[6]
In Dozier v. Garan's, Inc., we held that an injured worker is entitled to medical expenses to ascertain his medical condition.[7] Nevertheless, an employee has the burden of proving, by a preponderance of the evidence, that he may recover the costs of diagnostic tests or treatment which his treating physician recommends, if they are needed to determine the proper treatment[8] and are related to a work accident.[9]
In the case sub judice, TK asserts that the WCJ confused the claims arising out of the 1995 accident, which the parties settled, and those arising out of the 1997 *766 accident. Its argument is premised upon Mr. Cook's assertion that Mr. Johnson did not injure his back in the 1997 accident but in a March 1998 accident, which he allegedly sustained while working at home. However, Mr. Cook also alleged that Mr. Johnson did not mention a back injury from the 1997 accident but mainly groin pain. Nevertheless, the accident report, which Mr. Johnson filed on July 11, 1997, directly rebutted Mr. Cooks' assertion, as it specifically alleged both "[b]ack and abdominal, groin pain!!" Accordingly, as the WCJ apparently did, we also, attach very little weight to Mr. Cook's statements.
Notwithstanding TK's assertions, the record reflects that Dr. Cobb based his medical opinion, regarding the surgery, on the imaging studies performed on May 18, 1998, revealing a left paracentral disc herniation. Accordingly, TK's attempt to relate Mr. Johnson's condition to his July 1998 vehicular collision is meritless. Further, in his deposition, Dr. Cobb also stated that a lumbar spine myelogram and a CAT scan, performed on January 1, 1996, revealed no such disc bulge, herniation, or protrusion. Accordingly, TK's attempt to relate Mr. Johnson's condition to his 1995 accident must, as well, fail. We agree with the WCJ's decision that "there can be no question that the July 1997, accident caused the left lumbar disc herniation[.]" Therefore, we affirm his decision, ordering TK to pay for Dr. Cobb's recommended surgery, as well as the imaging studies, allowing him to reach his diagnosis.

INDEMNITY BENEFITS
The issue is whether the WCJ erred in finding that Mr. Johnson proved, by clear and convincing evidence, his entitlement to TTDs from September 16, 1997 through his maximum medical improvement after undergoing Dr. Cobb's recommended surgery. An employee is entitled to TTDs upon showing, by clear and convincing evidence, physical inability to engage in any employment.[10] To satisfy this burden of proof requires introducing objective medical evidence supporting the existence of a disabling condition.[11]
In the case sub judice, in a work status report form filled on August 20, 1997, Dr. Cobb specified that Mr. Johnson was unable to work pending treatment. In his deposition, Dr. Cobb confirmed that he did not advise that Mr. Johnson return to work. In fact, he stated "It probably would not be a good idea for him to try to return to work. I think he'd be pretty uncomfortable and he was complaining of pretty severe pain when he would sit[.]... I told him that I thought he was unable to work pending his treatment. So I don't think I released him after that." Dr. Mayer, however, in his November 11, 1998 evaluation, recommended that he was "probably capable of light duty employment at this point in time." Based on these medical evaluations, the WCJ had to decide between two permissible and reasonable views of the evidence and, evidently, chose to rely on Dr. Cobb's opinion to find Mr. Johnson totally disabled. We find no manifest error in the WCJ's decision.
Nevertheless, the WCJ awarded Mr. Johnson TTDs from September 16, 1997 through maximum medical improvement after undergoing Dr. Cobb's recommended surgery. TK claims that the court erred because Mr. Johnson did, in fact, work, from September 1997 to July 1998, thus *767 implying that the 1998 accident precipitated Mr. Johnson's disabling condition.
Our review of the record indicates that Mr. Johnson, in fact, did return to work with TK in the same capacity as that he occupied before his 1997 accident. Mr. Johnson admitted during trial that he had returned to work after his 1997 accident "until [his] back got so bad[.]" Accordingly, the trial court erred when it awarded Mr. Johnson TTD's from September 1997. However, the record does not confirm the dates which TK suggests in its brief. Instead, in his deposition, Dr. Mayer thought that Mr. Johnson had not returned to work after the imaging study performed in May of 1998, thus suggesting that Mr. Johnson stopped working before sustaining the 1998 vehicular collision.
Further, Mr. Johnson testified that he "went back to work and done [sic] whatever I could do that was possible. Sometimes my back would bother me so much I would miss two or three days of work because I couldn't hardly [sic] get out of bed, that's how I had to handle it, one day at a time." His testimony intimates that he may not have received the full amount of his regular wages.
Accordingly, the record does not allow us to determine with precision the exact time during which Mr. Johnson worked at TK after the 1997 accident but before he stopped working in 1998. Further, the record is also silent regarding the extent of his work, as well as his wages, during this uncertain period of time, thus precluding our determination of whether he may be entitled to workers' compensation benefits other than TTDs. Accordingly, we remand the case to the WCJ to conduct a hearing on these issues.

ATTORNEY'S FEES
An employee is entitled to penalties and attorney's fees when the employer arbitrarily, capriciously, or without probable cause fails to timely pay workers' compensation benefits.[12] In effect, this law describes an employer which fails to reasonably controvert the employees' claim.[13] An employer is deemed to have reasonably controverted a claim when it possessed sufficient factual and medical information to rebut the employee's factual and medical assertions.[14]
Accordingly, an employer may not deny an injured employee's benefits on the basis of inconclusive medical reports. Instead, the employer must undertake a reasonable effort to ascertain the extent of the employee's medical condition.[15] Further, an employer may not blindly rely on optimistic medical reports when presented with medical information showing disability.[16] Such reliance will result in the imposition of penalties and attorney fees.[17]
In the case sub judice, the WCJ awarded Mr. Johnson $3,500.00 in attorney's fees, although it found that TK did not act arbitrarily and capriciously. TK contends that the WCJ erred in this decision because an employee may only recover attorney's fees upon showing that the employer acted arbitrarily, capriciously, or without probable cause. We agree.
*768 Nevertheless, after reviewing the record de novo, and in light of our earlier findings, we conclude that TK did act arbitrarily and capriciously when handling Mr. Johnson's claim. In fact, had TK ascertained the chronology of Mr. Johnson's complaints, it would not have rested on its unsupported belief that his injuries were related to accidents pre-dating or postdating the 1997 accident. Further, Dr. Lee and Dr. Cobb, whom Mr. Johnson chose for treating physicians, both related Mr. Johnson's condition to his 1997 accident. Accordingly, when it relied on Dr. Mayer's findings to deny Mr. Johnson's workers' compensation benefits, TK did so at its own peril and exposed itself to the assessment of attorney's fees. Therefore, albeit for different reasons, we affirm the WCJ's attorney's fee award.

CONCLUSION
We affirm the WCJ's decisions, finding Mr. Johnson to be entitled to medical benefits and attorney's fees and awarding him TTDs from the time he stopped working for TK in 1998 to the time he would reach maximum medical improvement after undergoing Dr. Cobb's recommended surgery. However, we reverse the decision to award such TTDs from September of 1997 to some time in 1998 when Mr. Johnson stopped working and remand the case to the WCJ to determine the exact period of time which Mr. Johnson worked in 1998, as well as whether Mr. Johnson could be entitled to indemnity benefits other than TTDs during that period. We cast TK with costs of this appeal.
AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.
NOTES
[1] Martin v. Red Simpson, Inc., 94-817 (La. App. 3 Cir. 2/1/95), 649 So.2d 1155.
[2] Supreme Rice Mill v. Guidry, 98-1252 (La. App. 3 Cir. 3/10/99), 737 So.2d 856, writ denied, 99-961 (La.5/28/99), 743 So.2d 668.
[3] Knotts v. Snelling Temp., 27,773 (La.App. 2 Cir. 12/6/95), 665 So.2d 657.
[4] La.R.S. 23:1203(A).
[5] City of Jennings Police Dept. v. Dorr, 96-244 (La.App. 3 Cir. 6/26/96), 676 So.2d 1128.
[6] Lemoine v. Hessmer Nursing Home, 94-836 (La.App. 3 Cir. 3/1/95), 651 So.2d 444.
[7] 94-1363 (La.App. 3 Cir. 4/5/95), 653 So.2d 137.
[8] Scott v. Town of Jonesville, 96-41 (La.App. 3 Cir. 7/3/96), 676 So.2d 1196.
[9] Malbrue v. St. Landry Sch. Bd., 95-1426 (La.App. 3 Cir. 1/17/96), 673 So.2d 1157.
[10] La.R.S. 23:1221(1)(c); Parkes v. Prien Pines Nursery, 98-384 (La.App. 3 Cir. 11/4/98), 722 So.2d 36, writ denied, 98-2993 (La.1/29/99), 736 So.2d 837.
[11] Jackson v. Domtar Indus., Inc., 98-1335 (La.App. 3 Cir. 4/7/99), 732 So.2d 733, writ denied, 99-1369 (La.7/2/99), 747 So.2d 21.
[12] Gordon v. Sandersons Farms, 96-1597 (La. App.5/9/97), 693 So.2d 1279.
[13] Brown v. Texas-La Cartage, Inc., 98-1063 (La.12/1/98), 721 So.2d 885.
[14] Gordon, 693 So.2d 1279.
[15] Id.
[16] Scott v. Town of Jonesville, 96-41 (La.App. 3 Cir. 7/3/96), 676 So.2d 1196.
[17] Id.