812 So.2d 879 (2002)
William CLARK
v.
TOWN OF BASILE.
No. 01-1203.
Court of Appeal of Louisiana, Third Circuit.
March 27, 2002.
*880 John H. Pucheu, Pucheu, Pucheu & Robinson, L.L.P., Eunice, LA, for Appellant William Clark.
Christopher R. Philipp, Law Office of Christopher R. Philipp, Lafayette, LA, for Appellee Town of Basile.
Court composed of SYLVIA R. COOKS, BILLIE COLOMBARO WOODARD, and MICHAEL G. SULLIVAN.
COOKS, Judge.
This workers' compensation case has a long and complex procedural history and now comes before this court for the fifth time. Appellant, William C. Clark (Clark), appeals the judgment of the workers' compensation judge (WCJ) of April 18, 2001, denying his claim for penalties and attorney's fees. Clark also assigns as error the WCJ's failure to address his disability status for purposes of determining his correct benefits. For the reasons which follow, we reverse the decision of the WCJ and remand.

PROCEDURAL BACKGROUND

Clark's Injury
On November 26, 1989, while in the course and scope of his duties, Clark injured his right knee working as a police officer for the appellee, the Town of Basile (Basile). After Clark's injury, he worked until February of 1990. Basile began paying Clark temporary total benefits (ttd) on February 4, 1990, in the amount of $236.34 per week, based on a $354.54 average weekly wage. On March 3, 1990, Clark underwent the first surgery on his right knee. On December 27, 1990 Clark underwent a second surgery, again on the right knee. In September of 1991, Basile changed Clark's benefits from ttd to supplemental earnings benefits (seb). It was Basile's modification of Clark's benefits in September from ttd to seb that prompted the filing of Clark's first claim with the *881 Office of Worker's Compensation on November 1, 1991.

First OWC Judgment
Clark testified that because the September modification reduced the amount of his benefits, he filed his first petition to the OWC. This claim went to trial on May 21, 1992. The first OWC judgment was in favor of Basile and held that Clark had an earning capacity of $800.00 per month and that his status had changed from ttd to seb on September 9, 1991 based on Dr. Nason's, Clark's treating physician, opinion that Clark had reached maximum medical improvement in September of 1991.

First Decision From The Third Circuit Court of Appeal
On February 2, 1994, Clark appealed the first OWC judgment to this court and we rendered our first decision on Clark's worker's compensation benefits. Clark v. Town of Basile, 93-00519 (La.App. 3 Cir. 2/2/94); 631 So.2d 744 (unpublished opinion).[1] Clark contended he was entitled to ttd benefits and to penalties and attorney's fees for Basile's alleged arbitrary and capricious modification of his benefits from ttd to seb. He also contended the WCJ erred in finding he had an earning capacity of $800.00 a month. On February 24, 1994, we affirmed the OWC judgment in part, reversed in part[2], and remanded the case to the OWC for a determination of benefits consistent with that opinion.

Second OWC Judgment
While Clark's first appeal to this court was pending, he filed a second claim with the OWC on May 28, 1993. Clark stated he filed his second claim because he began having increased problems with his left knee resulting from added stress associated with weight shifting because of his right knee problems. Clark asserted his left knee problems constituted a change in his status from seb to ttd. On October 27, 1993, Clark underwent his third surgery with Dr. Nason. This surgery was the first on his right knee. Despite the surgery and Clark's request for modification, Basile did not change Clark's status from seb to ttd after the third surgery. On September 1, 1995, the second OWC judgment was rendered.
However, when the opinion from the party's first appeal to this court was rendered on February 24, 1994, the proceedings from Clark's second OWC claim were still underway. Because of the ongoing proceedings, specifically our remand of Clark's first appeal in our February 24, 1994-opinion, and Clark's second claim to the OWC, these two proceedings were consolidated at the OWC and tried on April 20, 1995. On September 1, 1995, the Office of Worker's Compensation issued the second OWC judgment on the consolidated proceedings. The OWC declared Clark was entitled to ttd benefits from September 9, 1991 to April 25, 1994, and was entitled to seb benefits from April 25, 1994 to April 20, 1995. Basile was ordered to pay penalties and attorney's fees and all costs because Basile failed to reinstate ttd benefits immediately following Clark's third surgery on October 27, 1993.

Second Decision From The Third Circuit Court of Appeal
Clark and Basile both appealed the second OWC judgment to this court. Clark v. Town of Basile, 95-1567 (La.App. 3 Cir. *882 5/8/96); 673 So.2d 369 (unpublished opinion). After review, we affirmed the second OWC judgment on May 8, 1996. We found Basile failed to timely reinstate Clark's ttd benefits following his third surgery and that Clark was eligible for ttd benefits from the date of that surgery, October 27, 1993, through April 24, 1994.

Third OWC Judgment
On August 15, 1996, Clark filed a third claim with the OWC. Clark stated his petition was a motion to impose penalties and assess costs. He asserted he filed the petition because Basile failed to timely pay him the amounts awarded in the second OWC judgment. Basile contended it was entitled to a Garrett-offset under La.R.S. 33:2218.2 for the voluntary state supplemental pay Clark received for his injury. On November 10, 1997, the third OWC judgment was rendered in favor of Clark. The judgment ordered Basile to pay Clark penalties and attorney's fees under LSA R.S. 23:1201F[3] because Basile failed to pay, within thirty days, the final judgment ordered in the second OWC judgment.

Third Decision From The Third Circuit Court of Appeal
Basile appealed the third OWC judgment in Clark v. Town of Basile, 98-439 (La.App. 3 Cir.10/7/98); 719 So.2d 730. Basile contended the WCJ failed to address its request for the Garrett-offset. We affirmed the third OWC judgment on October 7, 1998, concluding Basile failed to timely pay Clark the amounts he was awarded in the second OWC judgment and that Basile was not entitled to the Garrett-offset because it did not raise the issue of an offset as an affirmative defense. We found Basile raised the issue only after the WCJ had rendered a final judgment in that proceeding. We also affirmed the WCJ's award of penalties and attorney's fees.

Fourth OWC Judgment
On June 25, 1997, while Basile's third appeal to this court was pending, Basile filed a petition, again seeking a Garrett-offset of benefits it paid Clark pursuant to R.S. 23:1225(C)(1)(c) and in accordance with the supreme court's holding in Garrett v. Seventh Ward Gen. Hosp., 95-17 (La.9/22/95); 660 So.2d 841. The matter went to trial and culminated in the fourth OWC judgment between these parties on December 7, 1998. The judgment held that Clark's seb benefits would terminate after February 4, 2004, that Basile was entitled to the Garrett offset, that Clark's seb benefits after August 5, 1996 should be based on his earnings working twelve hour shifts, that Basile was entitled to recoup some overpayments it made to Clark, and the judgment denied Clark's claims for acceleration of benefits under La.R.S. 23:1333.

Fourth Decision From The Third Circuit Court of Appeal
Clark appealed the fourth OWC judgment. See Town of Basile v. Clark, 99-1261 (La.App. 3 Cir.); 769 So.2d 591, writ denied, 00-2002 (La.10/27/00); 772 So.2d 124. We affirmed the judgment in part, reversed in part, and remanded the case for further determination of the amounts owed back to 1996. We affirmed the WCJ's decision not to award Clark attorney's fees and the WCJ's denial of Clark's request for acceleration of benefits under La.R.S. 23:1333. We reversed the WCJ's decision granting Basile the Garrett-offset. Basile applied for writs to the supreme court; the writs were denied. Town of Basile v. Clark, 00-2002 (La.App. 3 Cir.5/31/00); 772 So.2d 124.

*883 Fifth OWC Judgment

While the fourth appeal was pending, Clark filed his third petition to the OWC. This petition culminated in the current dispute and the party's fifth appeal to this court. Clark's third petition requested a change in status from seb to ttd contending problems with his knee worsened after April 29, 1994. Clark also requested penalties and attorney fees. On April 18, 2001, the OWC issued its fifth judgment in this matter. Without any written reasons, the WCJ denied Clark's claim for penalties and attorney fees. Further, the OWC did not address Clark's request for determination of his disability status. This appeal by Clark ensued.

FACTUAL BACKGROUND
On November 26, 1989, while working as a patrol officer for the Basile Police Department, Clark's foot went through a rotten board of Basile's bathroom floor. As a result, Clark injured his right knee. Clark was treated by his family physician, Dr. Bobby Deshotel. An MRI was performed on January 15, 1990, and revealed a torn medial meniscus, and probable chondromalacia of the patella. Clark continued to work for three months after the incident, until February of 1990, when his knee would no longer allow him to get in and out of his car. He was referred to an orthopedic surgeon, Dr. Steven Nason ("Nason"), whom he began treatment with on February 5, 1990.
Basile began paying Clark temporary total benefits ("ttd") benefits on February 4, 1990. On March 2, 1990, Nason performed the first surgery on Clark's right knee. On December 27, 1990, Nason performed a second surgery, on Clark's right knee. On October 27, 1993, Nason performed a third surgery; the second surgery on Clark's left knee. The third surgery was a total knee replacement procedure performed on Clark's right knee.
On April 25, 1994, Clark's status was retroactively changed by Basile from ttd to seb based on the decision in the second appeal to this court. On April 12, 1995, the Mayor of Basile offered Clark a job as a dispatcher working eight-hour shifts at minimum wage. On April 24, 1995, Clark returned to work under the conditions offered by the Mayor. On April 28, 1995, Clark was informed by Basile's Police Chief that he could no longer work eight-hour shifts, and the Chief insisted he work twelve hour shifts. Clark continued to work. On August 5, 1996, Clark had a heart attack and stopped working as a dispatcher.
On October 7, 1998, Clark had an office visit with Nason. Nason concluded Clark could no longer work as a dispatcher. Throughout the 1999 year, Clark continued to visit with Nason. Nason began sending regular office notes to Basile to inform it of Clark's worsening condition. Basile did not respond, nor did it investigate Clark's condition. Further, Basile did not pay Clark any benefits, relying on the fourth OWC judgment granting it the Garrett-offset, among other things, and denying Clark's claim for accelerated benefits.
On January 13, 2000, Clark's attorney wrote a letter to Nason requesting an opinion on Clark's ability to work. On January 26, 2000, Nason responded to Clark's attorney with a letter. Clark's attorney mailed the letter to Della Hildebrand, the adjuster assigned to Clark's file. Mrs. Hildebrand is employed with Risk Management, Inc. (Basile's insurer) and represents Basile on Clark's file. On March 20, 2000, Ms. Hildebrand wrote Clark's attorney indicating she received his letter.
*884 On August 2, 2000, Clark visited Dr. Bernard to obtain a second opinion. Bernard agreed with Nason's diagnosis regarding Clark's failed condition. On October 3, 2000 Nason performed a fourth surgery on Clark, this time performing a total knee replacement surgery on Clark's right knee. On November 15, 2000, Ms. Hildebrand wrote a letter to Clark's attorney indicating Clark's ttd benefits had been reinstated as of October 3, 2000. She also enclosed a Form 1002 and a check in the amount of $1,418.16 as payment for ttd benefits from October 3, 2000. Additionally, she enclosed a check in the amount of $47, 072.68 as payment for back-due benefits in compliance with the judgment from the fourth appeal. On April 18, 2001, the Honorable Anthony P. Palermo issued the fifth OWC judgment in this case. He did not issue any written reasons for his judgment. This appeal by Clark followed.

DISCUSSION

A. Standard of Review
Appellate courts review an administrative law judge's decisions to determine if the conclusions are reasonable. Stobart v. State, through DOTD, 617 So.2d 880 (La.1993). Louisiana jurisprudence has a strong presumption that an appellate court may not set aside an administrative law judge's findings of fact in the absence of manifest or clear error. Rosell v. ESCO, 549 So.2d 840 (La.1989). Whether an employee should be awarded penalties and attorney's fees is essentially a question of fact and shall remain undisturbed absent manifest error. Spinks v. James Hutchins Farms, 98-811 (La.App. 3 Cir.); 736 So.2d 226, writ denied, 99-630 (La.4/23/99); 742 So.2d 888. Where a workers compensation judge commits a legal error by applying an incorrect legal standard or principle in determining whether to impose penalties and attorney's fees, Louisiana appellate courts are required to determine the facts de novo from the record and render a decision on the merits. Washington v. Lyons, 96-0263 (La.App. 1 Cir. 11/8/96); 683 So.2d 367, writ denied, 96-2444 (La.1/31/97); 687 So.2d 408.

B. TTD Benefits
Clark contends the WCJ failed to determine his current disability as requested in his fifth OWC petition. Determination of his status, he contends, may result in him receiving slightly higher benefits on an annual basis and may impact his total 520 weeks seb benefits. Clark contends the WCJ's failure to determine his status was an error of law and fact.

1. Law
Under La.R.S. 23:1221(1)(c) an employee is only eligible for ttd benefits under specific circumstances. The current statute provides an employee is allowed "compensation for temporary total disability... only if the employee proves by clear and convincing evidence ... that the employee is physically unable to engage in any employment or self-employment, ... notwithstanding the location or availability of such employment." La.R.S. 23:1221(1)(c); Holden v. International Paper Co., 31104, p. 3 (La.App. 2 Cir. 10/28/98); 720 So.2d 442, 444, writ denied, 98-2956 (La.1/29/99); 736 So.2d 834 (Emphasis added). A worker who is able to perform light duty work is not entitled to ttd benefits. Id. To satisfy this burden of proof the claimant is required to introduce objective medical evidence supporting the existence of a disabling condition. Johnson v. T.K. Stanley, Inc., 00-1000 (La.App. 3 Cir. 2/28/01); 781 So.2d 760.
We recognize that at the time of Clark's injury, however, the governing burden of proof standard under La.R.S. 23:1221(1)(c) only required the employee to proveby a *885 preponderance of the evidencethat the employee was physically unable to engage in any employment or self-employment. See Wokoma v. Hawk Pipe Service, Inc., 509 So.2d 665 (La.App. 3 Cir.1987).
An employer may not deny a claimant's workers' compensation benefits on the basis of inconclusive medical reports. Instead, an employer must undertake reasonable effort to ascertain the extent of the claimant's medical condition. Willis v. Alpha Care Home Health, 00-896 (La.App. 3 Cir. 1/31/01); 780 So.2d 505, modified, 01-638 (La. 5/15/01); 789 So.2d 567. See also Lemoine v. Harris Mang. Co., 97-586 (La.App. 3 Cir. 10/22/97); 702 So.2d 951, writ denied, 97-2912 (La.2/6/98); 709 So.2d 734; Gross v. Maison Blanche, Inc., 98-2341 (La.App. 4 Cir. 4/21/99); 732 So.2d 147.
La.R.S. 23:1221(1)(d) provides the duration an employee is eligible for ttd benefits. The statute provides as follows:
(d) An award of benefits based on temporary total disability shall cease when the physical condition of the employee has resolved itself to the point that a reasonably reliable determination of the extent of disability of the employee may be made, and the employee's physical condition has improved to the point that continued, regular treatment by a physician is not required, or six months after the injury, whichever first occurs. If the claimant contends that his disability is of a temporary nature, but extends beyond this six-month period, he must submit a claim for extension of the period of temporary total disability under R.S. 23:1310.3.[4]
See Brister v. Sears Authorized Retail Dealer, 99-945 (La.App.12/8/99); 753 So.2d 871, writ denied, C-0077 (La.2/25/00); 755 So.2d 887.
"An employee is entitled to penalties and attorney's fees when the employer arbitrarily, capriciously, or without probable cause fails to timely pay workers' compensation benefits. In effect, this law describes an employer which fails to reasonably controvert the employee's claim. An employer is deemed to have reasonably controverted a claim when it possessed sufficient factual and medical information to rebut the employee's factual and medical assertions." T.K. Stanley, Inc., 781 So.2d at 760.
Accordingly, an employer may not deny an injured employee's benefits on the basis of inconclusive medical reports, and may not blindly rely on optimistic medical reports when presented with medical information showing disability. Such reliance will result in the imposition of penalties and attorney's fees. Id.

2. Analysis
Clark contends the determination of the beginning and ending dates of his ttd disability period affects the number of seb weeks he will be entitled to receive once the ttd benefits end. According to the judgment of this court from the second appeal, Clark was eligible and should have received ttd benefits from February 2, 1990 (the date Basile first began payment of ttd benefits) through April 24, 1994, (the date Clark's status was retroactively changed from ttd to seb based on the judgment from the second appeal). In other words, his first period of eligibility *886 for ttd benefits extended from February 2, 1990 to April 24, 1994.
Sometime after this first period of eligibility ended, Clark entered his second period of eligibility for ttd benefits. The question which remains for our determination is when did Clark enter this second period of ttd eligibility. As the WCJ failed to address this issue, we are hereby called upon to address it on appeal. Clark contends the second period was triggered by the worsening condition leading to his October 3, 2000 surgery. He proffers several dates he contends this court should consider as the beginning date for his second period of eligibility.
Clark first contends he entered his second period of eligibility for ttd disability benefits on October 7, 1998. Clark states this is the correct date because this is the date Nason examined him and concluded his condition worsened to the point he could no longer work the eight hour dispatch shift. In support of his contention, he proffers the testimony of Nason written in a letter Nason addressed to Ms. Hildebrand on January 26, 2000. In the letter, Nason opined that Clark should have been on ttd status as early as October 7, 1998. The letter reads in pertinent part as follows:
I would be of the opinion that Mr. Clark is temporarily totally disabled at the present time, related to the problems with his knees. On looking back at my records, I would think that his total disability related to that would date back as early as October 7, 1988[sic][5] when I saw him in my office.
Clark asserts if the court accepts this date as his second period of ttd, it would mean his first period of seb disability ran from April 25, 1994 through October 7, 1998.
In the alternative, Clark contends he entered his second period of ttd eligibility on October 3, 1999. Clark contends this is the proper date because he could not work twelve months prior to his fourth surgery on October 3, 2000. Clark states if the court accepts this date as his second period of ttd, it would mean his first period of seb disability ran from April 25, 1994 through October 7, 1999.
Clark also proffers June 14, 2000 as a third alternative date he entered his second period of ttd eligibility. Clark asserts this is the date because this is when his treating physician, Nason, reached the conclusion he would need total knee replacement. He states if the court accepts this date as his second period of ttd, it would mean his first period of seb disability ran from April 25, 1994 through June 14, 2000.
Basile contends, on the other hand, Clark entered his second period of ttd disability eligibility on October 3, 2000, the day the total knee replacement was performed. Basile further contends it had no duty to recognize a change in Clark's disability status because the decision rendered in the fourth OWC judgment, on December 7, 1998. In that judgment, the WCJ stated Clark's 520 weeks of seb eligibility had expired on February 4, 2000. Since Clark had used up his maximum benefits, Basile suggests there was no need to consider Clark's request. However, in the party's fourth appeal to this court, we specifically found the WCJ's "setting termination of [seb] benefits at February 4, 2000, was in error." Town of Basile, 769 So.2d at 595.
After thorough review of the record, we are convincedby the preponderance *887 of the evidencethe appropriate date marking the beginning of Clark's second period of ttd eligibility is October 7, 1998. Although January 26, 2000, is the day Nason wrote the letter to Ms. Hildebrand informing her Clark was temporarily disabled, he clearly indicated Clark's total disability status dated back "as early as October 7, 1998." Ms. Hildebrand undeniably received the letter on March 20, 2000, and responded to it. We are convinced by the January 26-letter, Basile cannot not deny it was informed of Clark's temporary disabled status relating back to October 7, 1998. After becoming informed by Nason's letter, Basile could have, and should have, taken decisive steps to determine whether Nason's opinion was accurate. Despite acknowledging she was receiving regular reports from Nasonprior to the January 26, 2000 letter and throughout the 1999 yearindicating Clark's condition was worsening, Ms. Hildebrand failed to take any affirmative steps to determine Clark's disability status. Further still, Ms. Hildebrand testified that even after receiving the January 26, 2000 letter, she did not take any action to determine Clark's status. The letter was unequivocal proof Clark's status had changed to ttd as early as, October 7, 1998. Upon receipt of Nason's letter, Basile had an affirmative duty to "undertake reasonable effort to ascertain the extent of... [Clark's] medical condition." T.K. Stanley, Inc., 781 So.2d at 767. Our review finds Basile failed in this respect. Indeed, Basile proffers no evidence remotely suggesting Clark's status had not changed as indicated in Nason's letter. Though it contends it voluntarily retroactively changed Clark's status after the October 3, 2000 surgery, it fails to point out it waited 43 days after the surgery to make the modification, and it proffers no defensible explanation to show the delay was reasonable.

C. Penalties and Attorney Fees
Based on the aforementioned findings, we also award Clark penalties and attorney's fees. We conclude Basile's failure to reasonably controvert Nason's letter indicating Clark's status had changed constitutes arbitrary and capricious conduct.
As we have already stated, an employer has a duty to properly and thoroughly investigate a worker's compensation claimant's medical condition before terminating his or her benefits. Lemoine, 702 So.2d 951. To avoid assessment of penalties, an employer must demonstrate that reasonable efforts were made to ascertain a workers' compensation claimant's exact condition before denying benefits. Employers have an ongoing duty to review medical reports concerning disability. Gross, 732 So.2d 147. If an employer fails to make reasonable efforts to ascertain a claimant's exact medical condition before his or her benefits are terminated, the employer's actions may be considered arbitrary and capricious under La.R.S. 23:1201.2. Actions considered arbitrary and capricious will warrant imposition of attorney's fees. Id.
Because we find Basile failed to exercise reasonable effort to ascertain Clark's medical condition, we conclude Basile's actions were arbitrary and capricious. Basile did not investigate Nason's medical reports which indicated Clark's knees were worsening. Even after Basile received Nason's letter of January 26, 2000, Basile still failed to take any investigative action to ascertain Clark's exact medical condition which would have determined his level of disability. Further, we find Basile waited until November 15, 2000, thirty-seven days after Clark's October 3, 2000 knee replacement surgery, before it decided to retroactively reinstate *888 his ttd benefits from October 6, 2000, seemingly in total disregard of the surgery as well as Clark's continued request for modification.
As we find Basile failed to reinstate Clark's ttd benefits from the October 7, 1998 date, we accordingly assess penalties and attorney's fees against Basile for violating La.R.S. 23:1125(F). Attorney's fees are hereby assessed at $5,000.00. Penalties are assessed at $2,000.00, the maximum allowed under La.R.S. 23:1125(F).

DECREE
The judgment of the worker's compensation judge is reversed and the matter is remanded to the OWC for entry of judgment consistent with this opinion. All costs of this proceeding are assessed against the appellee, Town of Basile.
REVERSED AND REMANDED.
NOTES
[1] This opinion was later published as an appendix to our decision in City of Crowley v. Comeaux, 93-1116 (La.App. 3 Cir. 4/6/94); 638 So.2d 658, writ denied, 94-1184 (La.6/24/94); 640 So.2d 1355.
[2] We reversed on grounds not directly related to the matters before us. The WCJ failed to consider Clark's pre-existing hyperthyrodism when it determined that jobs were reasonably available to him.
[3] La.R.S. 23:1201(F) has been amended and renumbered as 23:1201(G).
[4] We note that La.R.S. 23:1221(1)(d) was amended by Acts 1999, No. 702, § 1, effective August 15, 1999, to delete the following language: "or six months after the injury, whichever first occurs. If the claimant contends that his disability is of a temporary nature, but extends beyond this six-month period, he must submit a claim for extension of the period of temporary total disability under R.S. 23:1310.3."
[5] Dr. Nason's deposition was taken in preparation for trial conducted on April 9, 2001. In the deposition, Nason stated the "October 7, 1988" date written in his letter was a typographical error. He stated the correct date was October 7, 1998.