| WOODARD, Judge.
Ms. Mary Flanders appeals the WCJ’s judgment in McDonald’s favor, contending that the WCJ committed manifest error in finding that she failed to prove that an accident occurred which caused her disability, in finding that she failed to prove, by clear and convincing evidence, that her disability has resulted in an inability to engage in any self-employment or occupation, and in finding that McDonald’s was not arbitrary and capricious in its denial of her claim for indemnity and medical benefits. For the following reasons, we affirm as amended.
* # * * * *
On the morning of August 1, 2000, Ms. Flanders, a McDonald’s employee, attempted to carry two boxes of frozen sausage patties from the freezer to the grill. Normally, a male employee performed this task, however, on this particular morning, he did riot show up for work. Ms. Lavonne LeBlanc, a co-worker, refused to lift the boxes because of her pregnancy. Therefore, Ms. Flanders lifted the first one and brought it to the grill without incident. However, when she lifted the second box, she felt something pop in her back and experienced pain. Consequently, she asked Ms. LeBlanc for help in carrying the second box to the grill. Then, she reported the incident to her supervisor, Ms. Katherine Jenkins.
Ms. Flanders completed the remainder of her shift in pain, after which she went home to rest. When the pain intensified later that day, she sought treatment in the emergency room at Dauterive Hospital. A physician diagnosed her with lumbar strain and advised her to follow-up with her own physician.
‡ ‡ ‡ ‡ ‡
Accident and Resulting Disability
Ms. Flanders asserts that the WCJ erred in finding that she failed to prove that an accident occurred that caused her disability. However, the WCJ found that she had established, by a preponderance of the evidence, that an accident occurred on the job and that she sustained an injury. Thus, the issue becomes whether or not the accident caused her alleged disability.
| gIt is well settled that we may not set aside a WCJ’s findings of fact, absent manifest error.[1] In applying this standard, we must not determine whether the WCJ was right or wrong, but whether the factfinder’s conclusion was reasonable.[2] Consequently, where there are multiple permissible views of evidence, the factfin-der’s choice between them can never be manifestly erroneous. Thus, if the WCJ’s findings are reasonable, in light of the record, we may not reverse, even if convinced that had we been sitting as the trier of fact, we would have weighed the evidence differently.[3]
*685 In order to recover workers’ compensation benefits, the claimant must show the causal relationship between the accident and the resulting disability. “Proof by a preponderance of the evidence is sufficient when the evidence taken as a whole, shows that the fact sought to be proved is more probable than not.”[4] Therefore, the claimant must prove that the employment caused or contributed to the disability, though it is not necessary that the exact reason be found.[5]
In meeting her burden of proving her disability, as well as the inability to engage in any self-employment or occupation, the claimant must introduce objective medical evidence supporting the existence of a disabling condition.[6] Accordingly, Ms. Flanders presented the WCJ with the reports of three physicians.
Dr. Michael Heard, Ms. Flander’s choice of physician, first saw her on November 14, 2000, approximately three-and-one-half-months after the accident. In his November 14, 2000 report, he stated:
There is mild limitation of right and left bending and moderate limitation of extension of the lumbar spine.... The straight leg raise shows no radicular pain at 90 degrees. The knee/chest position is negative for back or leg pain.... There is tenderness in the mid-line | slower lumbar region over the right and left paralumbar area, worse on the right side. No muscle spasm in the lumbar region.
Furthermore, the x-rays showed the lumbar region to be normal. Consequently, Dr. Heard recommended a “no work status” and physical therapy three times per week for two weeks.
On March 20, 2001, Dr. G. Gregory Gid-man saw Ms. Flanders at her employer’s request. Once again, the spinal x-rays revealed no abnormalities. He reported:
This examinee has reached MMI. There is no anatomic abnormality identified to explain her significant complaints of lower back pain.... She has a normal examination today. She should resume activities at work at a medium level initially and then progress to regular activities as tolerated.No testing, in my opinion, is indicated on this exami-nee.
Then, on April 19, 2001, Dr. Heard saw Ms. Flanders for the second time and recommended that she undergo a lumbar MRI scan. She saw him, again, on May 10, 2001. Once again, he recommended physical therapy, a lumbar MRI, and medications. He, also, approved light and sedentary duty. Finally, she saw him on May 31, 2001; he did not change any of his recommendations.
In turn, McDonald’s requested an independent medical examination. The Office of Workers’ Compensation granted its request and ordered that Dr. M. Angela Mayeux see her. On May 9, 2001, during the examination, Dr. Mayeux, neither, observed any tenderness down the center of her back, nor any spasms. She noted that Ms. Flanders had a full active range of motion of her back, and she reviewed the MRI report, as well as Dr. Heard’s notes. Thus, she concluded that Ms. Flanders should be able to return to her previous job, since no positive physical findings were evident. In a supplemental report dated July 12, 2001, Dr. Mayeux stated the following:
*686 Basically on the date I examined her, May 9, 2001, this woman had a normal physical examination. She had full range of motion on her back with no evidence of motor or sensory defect. This woman has had multiple physical examinations, all without evidence of radicular or neurologic components. I see no evidence to order an MRI of her lumbar spine. If she truly has objective findings of muscle spasm in her back that can be assisted with physical therapy, then I feel that physical Rtherapy is indicated. I feel that she can be returned to work at her previous employment. Due to the extended period of time that she has been off of work she may need to be in a work hardening program, but I think she can progress through that to her former employment.
In the instant case, the WCJ concluded that Ms. Flanders had established, by a preponderance of the evidence, that an accident, resulting in an injury, had occurred while on the job. However, she, also, concluded, based upon, both, lay and medical testimony, that Ms. Flanders failed to sustain her burden of proof that the accident caused a disabling injury. She stated:
In this case, there is no objective medical evidence to support the existence of a disabling condition. Moreover, Flanders admits that during the time she claims she was unable to work, she cared for, at least, seven (7) children in her home. Two of these children were age 1 and 2. The court believes that if Flanders could care for these two infants and several toddlers or adolescents, she could have performed her duties as a “grill.”
To reiterate, there were no findings of objective evidence to support her complaints of pain. All diagnostic tests were normal and after preliminary x-rays no doctor, save Dr. Heard, recommended further tests or treatment. Dr. Gidman recommended Flanders return to work without further treatment, as did the IME physician, Dr. Mayeaux. Dr. Mayeaux said, if Flanders had back spasms a work hardening program was indicated. However, the court found that there was no objective evidence of back spasms, in this case.
In order to reach a conclusion in the case at bar, the facts necessitated a credibility determination. When findings are based on determinations, regarding the credibility of witnesses, the manifest error-clearly wrong standard demands great deference to the trier of fact’s findings. After reviewing the record, given the WCJ’s judgment, as well as her well-founded reasons, we find that she did not commit manifest error in determining that Ms. Fleming’s injury did not result in a disability and affirm this part of the judgment.
However, turning to the medical expenses, which are separate and distinct from the disability benefits,[7] we do find manifest error. While the WCJ found that Ms. IsFianders had established that she was injured as a result of an accident on the job, she awarded no medical benefits. We do not believe that Ms. Fleming should have been required to wait to see if the injury was going to get worse and certainly not until she felt that the injury had progressed into a disabling condition, before even having an initial examination. Nor does the workers compensation scheme contemplate this. Even though she may not recover disability benefits, she is entitled to the medical expenses she *687 incurred as a result of the proven injury.[8] Ms. Flanders should be awarded the medical expenses that she incurred for treatment in the emergency room on the day of her injury, as the medical care she required on that day was found to be a result of the accident at work.[9] Thus, we amend the judgment in this respect.
Penalties and AttoRney’s Fees
Lastly, Ms. Flanders asserts that the WCJ erred in failing to find McDonald’s arbitrary and capricious in its denial of her claim. In addressing this issue, the court in Johnson v. T.K Stanley, Inc.,[10] stated:
An employee is entitled to penalties and attorney’s fees when the employer arbitrarily, capriciously, or without probable cause fails to timely pay workers’ compensation benefits. In effect, this law describes an employer which fails to reasonably, controvert the employees’ claim. An employer is deemed to have reasonably controverted a claim when it possessed sufficient factual and medical information to rebut the employee’s factual and medical assertions.
Accordingly, an employer may not deny an injured employee’s benefits on the basis of inconclusive medical reports. Instead, the employer must undertake a reasonable effort to ascertain the extent of the employee’s medical condition. Further, an employer may not blindly rely on optimistic medical reports when presented with medical information showing disability. Such reliance will result in the imposition of penalties and attorney fees.
[¿Tile WCJ’s judgment does not specifically mention Ms. Flanders’ claim for penalties and attorney’s fees, however, the WCJ denied all of her claims. We find no manifest error in her denial of this one.
CONCLUSION
Ms. Flanders suffered a work-related injury while working for a McDonald’s restaurant in New Iberia, Louisiana. Three physicians offered conflicting opinions for which the WCJ made a credibility determination. As we find that the WCJ committed manifest error in failing to award any medical expenses, we amend the judgment and award Ms. Fleming the medical expenses she incurred on August 1, 2000, the date of her injury. We affirm the judgment as amended and assess costs of this appeal to Ms. Flanders.
AFFIRMED AS AMENDED.

. Rosell v. ESCO, 549 So.2d 840 (La.1989).

. Banks v. Industrial Roofing & Sheet Metal Works, Inc., 96-2840 (La.7/1/97); 696 So.2d 551.

. Sistler v. Liberty Mut. Ins. Co., 558 So.2d 1106 (La.1990).

. Stein Mart v. Prejean, 01-718 (La.App. 3 Cir. 10/31/01); 798 So.2d 1230.

. Id.

. Id.

. Young v. Hercules, Inc., 451 So.2d 109 (La.App. 3 Cir.1984).

. Smith v. Martin Mills, Inc., 97-11 (La.App. 3 Cir. 5/21//97); 701 So.2d 680, writ denied, 97-1628, 701 So.2d 207 (La.10/3/97).

. Id.

. 00-1000 (La.App. 3 Cir. 2/28/01); 781 So.2d 760, 767.